tion under 42 U.S.C. §§ 1981 and 2000e et seq. to entertain the plaintiff's complaint, but finds that it has jurisdiction under 29 U.S.C. §§ 216 and 217 and 28 U.S.C. § 1337, to entertain plaintiff's complaint with regard to the alleged violations of 29 U.S.C. § 206(d)(1).

Accordingly, it is hereby ordered, adjudged and decreed that the defendant's motion to dismiss the plaintiff's amended complaint is sustained and plaintiff is given leave to file within twenty days a second amended complaint setting forth her claims under 29 U.S.C. § 206(d)(1).

**UNITED STATES of America,**

v.

**Charles AUTERBRIDGE, Defendant.**

**No. 74 Crim. 333–LFM.**

United States District Court,
S. D. New York.

May 7, 1974.

Linker & Linker, Brooklyn, N. Y., for defendant; Julian G. Linker, Brooklyn, N. Y., of counsel.

Paul J. Curran, U. S. Atty., S.D.N.Y., for the U. S.; John N. Bush, Asst. U. S. Atty., of counsel.

## OPINION

MacMAHON, District Judge.

Defendant Charles Auterbridge, charged with income tax evasion under 26 U.S.C. § 7201, moves to suppress certain evidence seized by agents of the Federal Bureau of Investigation (FBI) in connection with an investigation of defendant's gambling activities and subsequently turned over to the Internal Revenue Service (IRS) for use in this case. Defendant also moves to suppress statements and evidence given by him to the IRS following his indictment on the gambling charges.

An evidentiary hearing was held on April 19, 1974. It appears from the evidence there received that on December 9, 1971 the FBI, acting pursuant to search warrants issued on the preceding day, searched the defendant and premises owned or rented by him. The search warrants and the affidavits upon which they were based are essentially identical in all material respects save for the person and the premises to be searched.

The search warrants describe the property which was the object of the search and seizure as follows:

"gambling paraphernalia, original and duplicate records of bettors and of amounts wagered on a parimutuel racehorse policy gambling scheme, tally sheets, records reflecting who took the bets, and currency, all of which are evidence and instrumentalities of the commission of the crime of conducting an illegal gambling business, and conspiracy, in violation of 18 U.S.C. 1955 and 371."

In the course of the searches pursuant to these warrants, the FBI seized certain property which defendant concedes was gambling equipment. Other property seized by the FBI, namely, three bank books, one check book, three bank statements, cancelled checks and miscellaneous notes, papers, receipts and business cards, were later turned over to the IRS and are the subject of defendant's motion.[1]

Defendant contends that these seized items do not fall within the scope of the search warrants and that consequently their seizure was unlawful. We disagree.

There is no First Amendment issue involved here, as in Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed. 2d 431 (1965). The warrants, therefore, need not satisfy the strict particularity test there set forth.[2] The warrants here were as particular as could be expected under the circumstances and, therefore, did not convert the search into a constitutionally infirm general search.[3]

---

1. The FBI also delivered a red ledger book of the Auterbridge Dry Cleaners to the IRS, but it is not the subject of this motion since the government agreed not to offer it in evidence.

2. United States v. Scharfman, 448 F.2d 1352 (2d Cir. 1971).

3. United States v. Scharfman, *supra.*

■ The FBI could not be expected to identify each bank book, check book, each slip of paper or business card with particularity. "When circumstances make an exact description of instrumentalities, a virtual impossibility, the searching officer can only be expected to describe the generic class of items he is seeking." [4]

■ Each item seized by the FBI fits the sufficiently narrow generic description set forth in the warrants. It was entirely reasonable, under the circumstances of this case, for the searching agents to conclude that the bank books, check book, bank statements and cancelled checks were "evidence and instrumentalities of the commission of the crime of conducting an illegal gambling business," as described in the warrants. The amounts, nature and timing of receipts and disbursements, as evidenced by these banking transactions, are at least in part "records of bettors and of amounts wagered" in this gambling business. We conclude, therefore, that these items were lawfully seized pursuant to valid search warrants.

■ We reach the same conclusion as to nearly all of the miscellaneous notes, papers, receipts and business cards seized by the agents during the searches. It was reasonable for the agents to conclude that these items fell within the scope of the warrants. They contain names and in some cases accompanying addresses and telephone numbers. Considering the surrounding circumstances, these could certainly be "records of bettors" or "records reflecting who took the bets. . . ."

Furthermore, even if none of the seized property fell within the ambit of the warrants, it was still lawfully seized under the standards of United States v. Pacelli, 470 F.2d 67 (2d Cir. 1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1501, 36 L.Ed.2d 178 (1973). In *Pacelli*, boric acid, a diluent for cocaine, was seized during a search pursuant to a warrant specifying only heroin. The court, relying on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), held that once a search is begun on prior justification, whether by way of warrant for another object or any other legitimate reason, seizure of mere evidence of a crime, as well as contraband, is permitted if it is in plain view.

■ The situation here is similar to that in *Pacelli*. The agents were on the premises pursuant to valid search warrants, and, as in *Pacelli*, the property seized constituted evidence of a crime in plain view. Gambling paraphernalia was admittedly discovered during the searches. It could reasonably be presumed that the items seized were evidence of the illegal gambling activity. Therefore, even if the seized property did not fit within the scope of the warrants, it was lawfully seized under the plain view doctrine.

We find, therefore, that the seizure was lawful and deny defendant's motion to suppress the evidence seized during the searches.[5] Since the seizure was lawful, defendant's motion to suppress the fruits of the seizure must likewise be denied.

Defendant also moves to suppress all statements made by him to IRS agents, as well as any documents which he delivered to IRS agents. This motion is grounded on defendant's contention that once the IRS agents became aware that

---

4. James v. United States, 416 F.2d 467 (5th Cir. 1969), cert. denied, 397 U.S. 907, 90 S. Ct. 902, 25 L.Ed.2d 87 (1970).

5. Included among the miscellaneous items seized are an insurance policy, two automobile warranty plates and a charge card. Defendant does not specifically move to suppress these particular items, and we perceive them to be of limited materiality. Yet, since they do not seem to bear any reasonable relationship to gambling activities which were the target of the warrants and are not evidence of a crime, we grant defendant's motion to suppress insofar as it is addressed to these particular items.

he was under indictment for illegal gambling activities and had retained counsel to represent him on those charges, they could not question him or request documents without first informing his attorney. We disagree.

We note at the outset that before questioning defendant, the IRS agents advised him that he had a right to have his attorney present during the questioning. Defendant responded that he understood but chose instead to continue without an attorney.

The investigation of defendant's gambling activities was entirely independent of the tax evasion investigation. The mere exchange of documents between the IRS and FBI agents did not merge these two separate investigations into one unified effort.

■ Since these were wholly independent investigations, the IRS agents were under no obligation to inform the attorney retained by defendant in connection with the FBI investigation. Rather, they were under a duty to attempt to continue to secure evidence of defendant's criminal activities despite the fact that an indictment had been returned against defendant on other charges.[6]

Defendant's reliance on Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), is misplaced since there is no evidence that the IRS agents made surreptitious or deceptive attempts to obtain the statements or evidence from the defendant. On the contrary, they took pains to inform him of his right to have his attorney present during the questioning.

Accordingly, we deny defendant's suppression motion except as to the insurance policy, the automobile warranty plates and the charge card. As to those items only, the motion is granted.

So ordered.

6. United States v. Poeta, 455 F.2d 117 (2d Cir.), cert. denied, 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972).