Christine Marie HENNESSY, Appellant,

v.

The STATE of Texas, Appellee.

No. 63270.

Court of Criminal Appeals of Texas, Panel No. 1.

Oct. 12, 1983.

Rehearing Denied Dec. 7, 1983.

---

1. The State's treatment of the witness belies this claim.

88

Toby Bonds, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Michael Kuhn and Don Stricklin, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS and W.C. DAVIS, JJ.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for possession of a controlled substance, namely hydromorphone. The jury assessed punishment at seven years, probated.[1]

On February 16, 1978, Officer Earl Musick of the Houston Police Department received a tip from an informant that he and two other men planned to rob "an unknown Doctor of Dilaudid [hydromorphone] tablets which he sold from his residence." The next day, February 17, the police followed the informant and two other men to the street in front of appellant's residence and arrested the three men as they were getting out of their automobile to commit the robbery.

As he was being arrested, one of the three men told the police that if they had waited a few more minutes, they would have had him for robbery and possession of

---

1. Appellant was tried in a joint trial with her husband, Robert William Hennessy.

Dilaudid. Believing that appellant's husband, Dr. Robert Hennessy, had witnessed the arrest and that he and appellant "were possibly getting rid of the contraband that they had in the house," the police entered appellant's residence and arrested everyone present, including appellant and her husband.

Upon obtaining a search warrant, the police found 179 hydromorphone (Dilaudid) tablets in two unlabeled prescription bottles hidden in a potted plant in the upstairs master bedroom. Appellant, who testified that she was the one who had hidden the tablets in the plant, told the police where the pills were located and was present in the bedroom when the pills were recovered.

Appellant's first contention is that the trial court erred in denying her motion to suppress the evidence seized in the search. She argues that the search was unlawful because the warrantless arrest was illegal and because the affidavit for the search warrant failed to satisfy the probable cause requirements of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Art. 18.01(b), V.A.C.C.P.

The record clearly reflects that the police obtained a search warrant before making any search of appellant's residence. Thus no "search incident to arrest" was carried out. The issue is whether probable cause existed for the issuance of the search warrant.

From *Aguilar v. Texas,* supra, and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), a "two-pronged" test evolved to determine whether probable cause exists for issuance of a search warrant. Under this test, when a warrant is sought based on information from an informant, a police affidavit presented to a magistrate must reveal the "basis of knowledge" of the informant and provide facts showing the "veracity" of the informant. Veracity can be established by showing that the informant is "credible" or that the information given is "reliable." Alternatively stated, "[t]he affidavit must contain the underlying circumstances which lead to the informant's conclusion of guilt and underlying circumstances which lead affiant to believe that informant was credible and reliable." *Keen v. State,* 626 S.W.2d 309, 312 (Tex.Cr.App.1981); see also *Etchieson v. State,* 574 S.W.2d 753 (Tex.Cr.App.1978), cert. denied, 440 U.S. 936, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979); *Wood v. State,* 573 S.W.2d 207 (Tex.Cr.App.1978).

In its recent opinion in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court criticized the strict application of the "two-pronged" test of *Aguilar* and *Spinelli,* stating that although the veracity, and basis of knowledge of an informant are highly relevant factors in determining the value of an informant's report:

> "These elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case. (103 S.Ct. at 2327.)

> \* \* \* \* \* \*

> "Instead they are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. (103 S.Ct. at 2329.)

> \* \* \* \* \* \*

> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.... We are convinced that this flexible, easily applied standard will better achieve the accomodation of public and private interests that the Fourth Amendment requires than does the approach that has developed

from *Aguilar* and *Spinelli*." (103 S.Ct. at 2332.)

We will determine the validity of the search warrant in the instant case according to the "totality of the circumstances" analysis of *Illinois v. Gates,* supra.

The affidavit for the search warrant provides in pertinent part:

"On February 16, 1978, your affiant received information from Ivey Urquhart that two white males known to him as Harold Barnes and Steven Robertson were planning on robbing an unknown Doctor for Dialuadid tablets which he sold from his residence. Ivey knew the beforementioned subjects from serving time in the penitentiary with these two subjects. Ivey went on to say that Harold Barnes scored his narcotics from this Doctor and knew the Doctors operation involving the selling of narcotics. Ivey further stated that a meeting had been set up by Harold Barnes to further plan this robbery at approximately 9:00 P.M. this date.

"On February 17, 1978, your affiant had occasion to be in the 3000 block of Austin Street and observed Harold Barnes at approximately 11:00 A.M. This is the location where Ivey Urquhart lives. At 12:40 P.M. while in Special Crimes your affiant received a call from Ivey Urquhart stating that the meeting did occur late on the evening of the 16th of February, 1978 and that Harold Barnes took Ivey Urquhart and showed him the residence at 1236 Rutland, Houston, Harris County, Texas. Barnes further stated that this was the location where he had been scoring his Dialuadid. Ivey further related to your affiant during this phone call that Robertson would not be participating in the robbery as he had to go to Dallas. Your affiant contact Robertson's parole officer, Mrs. Denton in Houston, Texas and was told by Mrs. Denton that Robertson had gotten a travel permit to go to Dallas beginning February 17, 1978.

"Ivey Urquhart related to your affiant that Barnes had solicited a Frank Cornelius to assist in the robbery. Urquhart stated to your affiant that Barnes had told him that Urquhart and Cornelius would have to actually rob the Doctor because the Doctor knew Barnes. The said Urquhart related to your affiant that there was a meeting scheduled later this afternoon. At that time your affiant was told by Urquhart that Barnes was to have the guns at said meeting.

"Immediately after receiving the said call from Urquhart your affiant proceeded to the 3000 block of Austin Street. While at that location your affiant saw the said Barnes and a person who was unknown, and the said Urquhart together. At the time your affiant observed the individuals they were in a 1968 Pontiac Stationwagon bearing KUD 524 current Texas license plates.

"Prior to the meeting aforesaid, Jerry Carpenter, a Houston Police Officer known to your affiant, placed a transmitting device on the said Urquhart. Additionally the said Urquhart had a tape recorder concealed on his person. The transmitter was capable of transmitting all conversation which were held in his presence to a receiver which was being monitored by the said Jerry Carpenter.

"The said Carpenter monitored these conversations and overheard the individuals discuss the details of the robbery. This information was told to your affiant by the said Carpenter.

"Your affiant and other members of the Houston Police Department established surveillance on Ivey Urquhart's residence in the 3000 Block of Austin Street in Houston, Harris County, Texas. At approximately 4:30 P.M. this date your affiant observed and followed the three individuals leave the said location and get into a 1968 Pontiac Stationwagon, bearing current Texas license plates KUD 524. This automobile was followed by your affiant to the intersection of Rutland and 14th Street where they parked the said vehicle. Two individuals got out of the said automobile which were recognized as Ivey Urquhart and Frankie

Wayne Shirley by your affiant. At this time the three individuals were arrested. "At the time of his arrest the said Barnes told your affiant that 'If you had waited a few more minutes, you would have gotten the Dialuadid and had me for robbery.' Your affiant asked the said Barnes what he meant by that statement and he told your affiant that his girl friend Iwona Provenzzano had just called the Doctor Hennessy's residence and had been told by Chris, the Doctor's wife, that the Dialuadid would be there shortly, that it would be arriving shortly."

■ It is evident from this affidavit that the magistrate based his finding of probable cause partially on information involving multiple hearsay. Hearsay-upon-hearsay may be utilized to show probable cause as long as the underlying circumstances indicate that there is a substantial basis for crediting the hearsay at each level. See *Evans v. State,* 530 S.W.2d 932 (Tex.Cr. App.1975); *United States v. McCoy,* 478 F.2d 176 (10th Cir.1973), cert. denied 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62. See also *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

■ Here, the informant Urquhart had no personal knowledge of any illegal substances at appellant's residence. The basis of his knowledge was Barnes' statements that Barnes "scored" his narcotics from appellant's residence, from a doctor unknown to Urquhart. Thus the affidavit must indicate that both Urquhart's and Barnes' statements were trustworthy. Urquhart's credibility and reliability are established because he was a named informant, and because he gave detailed information about Barnes' activities which was substantially corroborated by independent police investigation. See *Avery v. State,* 545 S.W.2d 803 (Tex.Cr.App.1977).

The affidavit reflects that Barnes' information came from direct dealings with appellant's husband at appellant's residence, although Barnes did not specify when he last obtained narcotics there. As for Barnes' "veracity," his statements were made in conjunction with declarations

against penal interest about the robbery which is at least one factor indicating reliability. See *Abercrombie v. State,* 528 S.W.2d 578 (Tex.Cr.App.1975); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Furthermore, Barnes drove Urquhart by appellant's residence the day before the planned robbery of Dilaudid was to take place, and was arrested near the front of appellant's residence the following day as he was about to rob appellant. These acts tend to substantiate Barnes' statements.

Barnes' statement to the affiant after he was arrested that "if you had waited a few more minutes, you would have gotten the Dilaudid and had me for robbery" also involves multiple hearsay, and thus each level must be scrutinized. Barnes explained that his girlfriend, Iwona Provenzano, told him that appellant told Iwona that the Dilaudid tablets would be arriving at appellant's house "shortly." At this point, however, Barnes became a named informant, since he was speaking directly to the police officer. His statements to the officer corroborated the prior statements related by Urquhart. Furthermore, he made a declaration against penal interest in front of the officer. In all, these circumstances indicate that there was a substantial basis for believing that Barnes' statements were trustworthy.

Although the affidavit does not specifically indicate whether Iwona Provenzano was reliable or credible, the basis of her information is clearly set out: she had "just" telephoned appellant and appellant had stated that the Dilaudid would be at appellant's residence "shortly." Furthermore, there are other circumstances present which suggest the probable absence of any motivation by Iwona to falsify information when communicating with Barnes. The affidavit reflects that Barnes intended to rob appellant and her husband for the Dilaudid tablets. It is reasonable to assume that Barnes was relying on his "girlfriend" Iwona for accurate information so that he would know when to commit the robbery successfully, and thus a "conspiratorial brotherhood and a desire for illicit profit

would militate against exchanging false information." LaFave, *Search and Seizure,* Section 3.3 at n. 139.

Finally, appellant's statement to Iwona constituted an admission, which is an indication of reliability. It is a reasonable inference from appellant's conversation with Iwona that Iwona was a potential customer for the Dilaudid which would be arriving shortly, and thus a further indication of trustworthiness is shown. See LaFave, supra.

Keeping in mind that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants," *Ventresca v. United States,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965), we hold that the magistrate had a substantial basis for concluding that probable cause existed for the search based on the "totality of the circumstances" presented in the affidavit.

■ Appellant's next contention is that the trial court erred in failing to conduct an evidentiary hearing concerning the veracity of statements made in the affidavit for search warrant. She maintains that such a hearing should have been held because "the affidavit contained a falsehood."

The United States Supreme Court held in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), that where a defendant makes a substantial preliminary showing that the affiant to a search warrant intentionally, knowingly, or with reckless disregard of the truth included a false statement therein, the defendant must be afforded a hearing to determine the validity of his claim.

At the hearing on the motion to suppress appellant offered the testimony of Iwona Provenzano Harrell. The State's objection that appellant "is clearly attempting to go behind the affidavit for the search warrant, and that is absolutely not permissible in Texas Law" was sustained by the judge. On an offer of proof, it was stated that if allowed, Iwona "would testify that she was not the girlfriend of a Harold Barnes; that she did not see Harold Barnes at any time

pertaining to the dates of this search taking place on February 16th or 17th; that she had not talked to Harold Barnes in some thirty to forty-five days; and that she had not just telephoned a Harold Barnes."

The trial court was incorrect in sustaining the State's objection to Harrell's testimony. *Franks v. Delaware,* supra, constitutes an exception to the "four corners" rule.

■ Nevertheless, appellant's offer of proof presents no evidence that the *affiant* intentionally, knowingly, or with reckless disregard of the truth placed false assertions in the affidavit. There is nothing to indicate that appellant would have called anyone else to the stand to testify on this point. Thus, appellant made no showing that she was entitled to a *Franks v. Delaware* hearing, and any error by the trial court in sustaining the State's objection was harmless. Appellant's ground of error is overruled.

■ Appellant's final contention is that the evidence is insufficient to sustain the verdict that the "defendant possessed the hydromorphone . . . with intent to deliver same." The record reflects that appellant was convicted of possession of a controlled substance, not possession with intent to deliver. Nevertheless, we will discuss the sufficiency of the evidence to support the conviction for possession.

Appellant testified at trial that she possessed the Dilaudid tablets and hid them in the potted plant where they were found, but stated that the pills had been validly prescribed to her friend, Iwona Provenzano Harrell, and that she was holding the pills for her friend for safekeeping. It is doubtful whether this was a valid defense. See *Scott v. State,* 600 S.W.2d 801 (Tex.Cr.App. 1980). Furthermore, the jury, as the trier of facts, was free to disbelieve this testimony. *Ables v. State,* 519 S.W.2d 464 (Tex.Cr. App.1975). Since the appellant admitted possession of the contraband at trial, the evidence sustains her conviction.

The judgment is affirmed.