Jack Fenner ELLIOTT, Appellant,

v.

STATE of Texas, Appellee.

No. A14–82–777–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 15, 1984.

Rehearing Denied April 5, 1984.

Review Granted Oct. 24, 1984.

Frank Sheppard, Houston, for appellant.

Calvin Hartmann, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

CANNON, Justice.

This is an appeal from a conviction for gambling promotion in violation of Tex.Penal Code Ann. § 47.03 (Vernon 1974). Trial to a jury, punishment by the Court at seven years and a $5,000.00 fine. Appellant raises five grounds of error attacking the search warrant, the admission of sound recordings, the concealment of the informer's identity, and the prosecutor's failure to make pre-trial disclosure of an analysis of appellant's handwriting. We affirm.

Vice Officer L.E. Doreck of the Houston Police Department received information from a confidential informant that appellant was taking bets on football games. The informant told Doreck that for several months he had occasionally telephoned appellant and obtained current line information on college and professional football games, and placed bets on those games. Doreck verified the address and telephone number given to him by the informant as that of appellant. Doreck also learned that appellant had been arrested on April 12, 1977 for promotion of gambling at the same address. Based on this information, Doreck obtained a Search and Arrest War-

rant for appellant. On November 22, 1981, appellant was arrested at his home. At that time, the officers seized "line" sheets, "recap" sheets, and other "gambling paraphernalia" from appellant's residence. While appellant was being arrested, vice officer Fred Medley placed recording devices on two of appellant's telephones with which he taped numerous calls from "bettors." The "bettors" inquired about the current "line" on games and placed bets.

In his first ground of error, appellant contends that his conviction was based upon "illegally seized evidence" because the affidavit supporting the search warrant "failed to state facts sufficient to constitute probable cause." He argues that the affidavit failed to comply with the requirements of: U.S. Const. Amend. IV; Tex. Const. art. I, § 9, and; Tex.Code Crim. Proc.Ann. art. 18.01 (Vernon Supp.1982–1983). Appellant relies upon *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) in support of his attack on the search warrant affidavit. Appellant's reliance is misplaced, however, because the "two-pronged" *Aguilar-Spinelli* test was abandoned by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In its place the court reaffirmed the "totality of the circumstances" that traditionally has informed probable cause determinations. *See United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Texas adopted the *Gates* analysis for search warrant affidavits in *Hennessy v. State*, 660 S.W.2d 87 (Tex.Crim.App. 1983).

In *Hennessy*, the affidavit contained "multiple hearsay", and the informant Urquhart "had no personal knowledge of any illegal substances at [Hennessy's] residence." Urquhart's knowledge was based on statements made by a man known as

"Barnes." Barnes told Urquhart that he "scored" his narcotics from Hennessy's residence. Urquhart learned that Barnes planned to rob Hennessy for Dilaudid. Based upon the circumstances surrounding the planning of the robbery and upon statements made by Barnes at the time of his arrest, a search warrant was obtained for the Hennessy residence.

The affidavit for the search warrant included the following instances of corroboration by police efforts:

"Jerry Carpenter, a Houston Police Officer known to your affiant, placed a transmitting device on the said Urquhart.

\* \* \* \* \* \*

"The said Carpenter monitored these conversations and overheard the individuals discuss the details of the robbery. This information was told to your affiant by the said Jerry Carpenter.

\* \* \* \* \* \*

"At the time of his arrest the said Barnes told your affiant that 'If you had waited a few more minutes, you would have gotten the Dialuaded [sic] and had me for robbery.' Your affiant asked the said Barnes what he meant by that statement and he told your affiant that his girl friend Iwona Provenzzano had just called the Doctor Hennessy's residence and had been told by Chris, the Doctor's wife, that the Dialuadid [sic] would be there shortly that it would be arriving shortly."

After finding a substantial basis for crediting each level of hearsay, the Court of Criminal Appeals found that "probable cause existed for the search based on the 'totality of the circumstances' presented in the affidavit." *Hennessy* at 92.

Therefore, we will evaluate the validity of the search warrant in this case under the "totality of the circumstances" standard. *Illinois v. Gates,* 103 S.Ct. at 2332; *Hennessy v. State,* 660 S.W.2d 87 at 92 (Tex.Crim.App.1983).

The affidavit in the instant case provides, in pertinent part, that:

"On October 22, 1981, your affiant was contacted by a confidential informant, *who has given your affiant information on several past occasions concerning criminal activities and on each and every past occasion your affiant found this information to be true and correct.* [T]he informant . . . stated to your affiant that a person, known to the informant, as Jack Elliott, was currently conducting an illegal bookmaking operation. The informant stated to your affiant that he, the informant, had been personally betting with Jack Elliott for the past several months and that he would contact Elliott by calling Telephone number 462–2019 and that Elliott would give your informant current line information on both college and professional football games as well as receive and record any bets which the informant wished to place with Elliott. The informant further gave your affiant a physical description of Elliott and said that Elliott was approximately 6' tall, 220 lbs with a beer belly and was in his late 20's.

"On October 23, 1981, your affiant met with Sgt. S.D. Plaster who is the Supervising Officer of the Gambling Squad of the Houston Police Department Vice Division, and relayed the aforesaid information to Plaster. Further, your affiant requested Plaster to contact the Southwestern Bell Telephone Company in order to ascertain billing information on telephone number 462–2019. Later that same date, Plaster related to your affiant that he, Plaster, had learned from Southwestern Bell Telephone Company that telephone number 462–2019 is an unlisted number installed at 3601 Lazy Spring, Houston, Texas, and is billed to Jack F. Elliott at that address. In addition thereto, your affiant contacted Houston Lighting and Power Company and determined that the utilities at 3601 Lazy Spring, Houston, Texas, were billed to Jack F. Elliott at that address and that the records of Houston Lighting and Power Company show that Elliott's phone number was 462–2019. *Further, your affiant checked the records of the Houston*

*Police Department Vice Division and learned that Jack Elliott had been arrested on April 12, 1977 for promotion of Gambling and this arrest occurred at 3601 Lazy Spring.*

"On October 25, 1981, Elliott gave the informant current line information on both college and professional football games and the informant placed several bets with Elliott. On that same date, your affiant personally went to 3601 Lazy Spring, Houston, Texas, and found this to be a beige single story residence.

"On October 26, 1981, your affiant again spoke with the informant who stated to your affiant that he again called telephone number 462–2019 and again placed a bet with Jack Elliott.

"On November 1, 1981, your affiant again spoke with the confidential informant who stated to your affiant that he, the informant, again called telephone number 462–2019 and again placed a bet with Jack Elliott.

"On November 2, 1981, your affiant again spoke with the confidential informant who stated that he had again called telephone number 462–2019 and again placed bets with Jack Elliott on football games scheduled to be played.

"On November 18, 1981, your affiant again spoke with the aforesaid confidential informant who stated to your affiant that Jack Elliott is still receiving and recording bets and can still be reached at telephone number 462–2019.

"Your affiant has related all of the aforesaid information contained in this affidavit to Sgt. S.D. Plaster. Your affiant personally knows that Plaster has been assigned to the Gambling Squad of the Houston Police Department for approximately seven years and has participated in hundreds of gambling investigations and arrests. Further, Plaster has stated to your affiant that it has been his experience that bookmaker[s] routinely keep gambling paraphernalia including, but not limited to, line sheets, recap sheets and bet slips inside of the premises where they are receiving and recording bets. *Based upon the information re-ceived by your affiant and the investi-gation that your affiant has done in this case, coupled with Plaster's experi-ence with gambling investigations, it is Plaster's opinion that Gambling para-phernalia is currently located in 3601 Lazy Spring, Houston, Harris County, Texas.*" (Emphasis added).

The instant affidavit clearly sets forth a basis for the "veracity" of the informant; he had given reliable information in the past. His information was corroborated by independent police inquiries directed to the Southwestern Bell Telephone Company and the Houston Lighting and Power Company. The affiant, officer Doreck, personally veri-fied the description and address of the El-liott residence given to him by the infor-mant.

■ The affidavit sufficiently states the informant's "basis of knowledge". Unlike the affidavits in *Aguilar* and *Spinelli*, the underlying circumstances forming the in-formant's basis of knowledge" of criminal activity were set forth in the instant affida-vit. We acknowledge that "the resolution of doubtful or marginal cases in this area should be largely determined by the prefer-ence to be accorded to warrants ...." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). We conclude that the magistrate had a "substantial basis" for concluding that probable cause existed for the search based on a "totality of the circumstances" analysis. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the search warrant failed to meet the requirements of article 18.04 of the Texas Code of Criminal Procedure. We disagree.

■ One of the requirements of a valid search warrant is "that it identify, as near as may be, that which is to be seized...." Tex.Code Crim.Proc.Ann. art. 18.04(2) (Ver-non 1977). The affidavit which supports the search warrant in question describes the things to be seized from appellant's house as "... any and all gambling para-

phernalia that may be located therein." The search warrant itself contains the same language. The Fourth Amendment prohibits general warrants which fail to particularly describe the property to be seized. *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927).

 It is well-settled that the description required depends upon the thing being described. *Gonzales v. State,* 577 S.W.2d 226, 228 (Tex.Crim.App.1979). And, when "things to be seized" (i.e., books, papers, records, and documents) are subject to First Amendment concerns, "and the basis for their seizure is the ideas which they contain," the warrant "is to be accorded the most scrupulous exactitude." *Stanford v. Texas,* 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431 (1965). *See also Gonzales v. State,* 577 S.W.2d at 228. However, the First Amendment concerns raised in *Stanford* are not present in the instant case. *See United States v. Auterbridge,* 375 F.Supp. 418 (S.D.N.Y.1974).

A warrant specifying for seizure "bookmaking paraphernalia" was held to be sufficiently particular in *Spinelli v. United States,* 382 F.2d 871, 886 (8th Cir.1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). "When the circumstances of the crime make an exact description of the fruits and instrumentalities a virtual impossibility, the searching officer can only be expected to describe the *generic class* of items he is seeking." (Emphasis added) *Id.* The Fifth Circuit has approved of the description "gambling paraphernalia." *James v. United States,* 416 F.2d 467, 473 (5th Cir.1969),

*cert denied,* 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970).

 In the case at bar, the warrant identified the items to be seized "as precisely as the nature of the activity permitted." *Id.* at 473. We conclude that the warrant for "gambling paraphernalia" is not a general warrant in contravention of the Fourth Amendment to the Constitution of the United States and of Tex.Code Crim.Proc.Ann. art. 18.04(2) (Vernon 1977). Appellant's second ground of error is overruled.

Appellant contends in his third ground of error that the trial court erroneously admitted two sound recordings into evidence. Appellant argues that the State failed to lay the proper predicate for introduction of sound recordings.

The seven requirements for admission of a sound recording are set out in *Bates v. State,* 587 S.W.2d 121, 131 (Tex.Crim.App. 1979). *See also Edwards v. State,* 551 S.W.2d 731, 733 (Tex.Crim.App.1977).

 Houston Police Officer Fred Medley testified that he tested the tape recorder prior to making the tapes and determined that it was in good working condition; that he was competent to operate the recorder and had done so on several previous occasions; that he played the tapes, after recording, to verify their accuracy; that the tapes were locked in an evidence locker and remained in his custody precluding any changes, additions or deletions; that the tapes remained in the locker until the day of trial; that a certain voice was his and other voices were bettors calling, and; that many calls were placed by bettors to obtain the "line" on various football games. We find that the State laid the proper foundation for introduction of the tapes; the trial court properly admitted the recordings into evidence. Appellant's third ground of error is overruled.

In his fourth ground of error, appellant contends the trial court wrongfully denied discovery of the informer's identity. Appellant argues that the informer "is certainly a material witness to appellant's case ...."

■ The identity of an informant need be disclosed only when the informant (1) participated in the offense; (2) was present at the time of the offense or arrest; or (3) was otherwise shown to be a material witness to the transaction or as to whether appellant knowingly committed the act charged. *Carmouche v. State,* 540 S.W.2d 701, 703 (Tex.Crim.App.1976). Those tests were not met in the instant case as the appellant failed to show that the informer either participated in the offense, or was present at the time of the offense, or was a material witness to the offense.

By his fifth ground of error, appellant contends that his conviction is void because the State failed to timely disclose requested material evidence favorable to him. Appellant argues that certain handwriting comparison information would have been favorable to him if he had known about it prior to trial. We do not agree.

■ It is reversible error if the prosecutor suppresses evidence which may exonerate the defendant or be material to his defense. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *See Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). *Crutcher v. State,* 481 S.W.2d 113, 115 (Tex.Crim.App. 1972). The suppression of such evidence is a violation of due process whether inadvertent or not. *Brady v. Maryland,* 373 U.S. at 87, 83 S.Ct. at 1196; *Crutcher v. State,* 481 S.W.2d at 116. In such cases, the standard applied is whether the evidence may have had an effect on the outcome of the trial. *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Means v. State,* 429 S.W.2d 490 (Tex.Crim. App.1968).

■ On May 4, 1982, the trial court granted the State's motion to obtain a handwriting sample from appellant. The trial began on June 28, 1982, almost two months after the State's motion had been granted. Appellant has not made a showing that at the time of trial he had no knowledge of a comparison test having been performed on his handwriting sample. Absent such showing, the proof in the

record is inadequate to support an allegation of improper suppression. *See Palafox v. State,* 484 S.W.2d 739, 745 (Tex.Crim. App.1972); *Evans v. State,* 444 S.W.2d 641 (Tex.Crim.App.1969); *Hinkle v. State,* 442 S.W.2d 728 (Tex.Crim.App.1969).

■ Sergeant Stan Plaster of the Houston Police Department, Vice Division, testified that he took appellant's handwriting sample and submitted it to the document examiner of the Houston Police Department. Plaster further testified that the test results were "inconclusive." Appellant argues that had he known of such a test, he could have called the document examiner to testify to his benefit. In view of Plaster's testimony that the results of the handwriting comparison were "inconclusive", appellant was not denied the benefit, if any, of the comparison. Even if appellant had proven that he had no knowledge of the results of the comparison test, we do not think additional testimony on the matter from the document examiner would have had an effect on the outcome of the trial. Appellant's fifth ground of error is overruled.

The judgment of the trial court is affirmed.