Jerome Charles GRIESE, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–90–01064–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 27, 1991.

Rehearing Denied Dec. 19, 1991.

Don Lambright, Houston, for appellant.

Mary Lou Keel, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellant was indicted on two counts of promotion of gambling, TEX.PENAL CODE ANN. § 47.03 (Vernon 1974), and one count of keeping a gambling place TEX.PENAL CODE ANN. § 47.04 (Vernon 1974). He pled guilty, and the trial court assessed punishment at five years' probation and a $750 fine. We affirm.

Vice Officer G.D. Todd of the Houston Police Department received information from his supervising officer, Sgt. H.S. Plas-

ter, concerning an illegal bookmaking operation that was allegedly being conducted by appellant. Sgt. Plaster was contacted by a confidential informant who told him that appellant was taking bets on basketball games. The informant told Plaster that for several weeks he had telephoned appellant and obtained current betting line information on college and professional basketball games and placed bets on those games. Todd verified the address and telephone numbers given by the informant as that of appellant. One of the phone numbers was assigned to a residence and the other to a business. Todd established surveillance on appellant's business and observed a red Chevrolet Corvette in the attached parking garage, similar to the one described by the informant as belonging to appellant. A check with the Texas Department of Public Safety/Motor Vehicle Division showed the car to be registered in appellant's name.

Between March 17 and May 13, the informant contacted Plaster on at least fourteen different occasions and told him that he had phoned and placed bets with appellant. Each of these phone calls was made at a time when most bookmakers use to accept wagers on such games. Todd learned that the phone number assigned to appellant's residence was forwarded to a portable cellular phone not billed to appellant. Between January and March of 1990, over 990 calls were billed to this number. The majority of them lasted from one to three minutes. Most of the outgoing calls from the cellular phone were made to a phone installed at appellant's residence and to sports service numbers that provided betting line information and scores for sporting events. Based on this information, Todd obtained a Search and Arrest Warrant. On May 14, appellant was arrested in the parking garage attached to his business. At that time, the officers searched a briefcase belonging to him and found betting slips, line sheets, recap sheets, and other gambling paraphernalia. Appellant filed a motion to suppress the seized evidence. The trial court denied the motion after a hearing while noting that appellant was reserving his right to appeal. Appel-

lant pled guilty, punishment was assessed, and this appeal followed.

In his sole point of error, appellant contends that his conviction was based upon illegally seized evidence because the affidavit supporting the search warrant failed to state facts sufficient to constitute probable cause. He argues that the affidavit did not comply with the requirements of U.S. CONST.AMEND. IV, TEX. CONST. art. I, § 9, TEX.CODE CRIM.PROC.ANN. art. 1.06 (Vernon 1974), and TEX.CODE CRIM.PROC.ANN. art. 38.23 (Vernon Supp.1991). Since the exclusionary provision of TEX.CODE CRIM.PROC. ANN. art. 38.23 (Vernon Supp.1991) is triggered only by evidence obtained in violation of the constitution and laws of the United States or of the State of Texas, whether it was will be determinative of this appeal.

In *Eisenhauer v. State,* 754 S.W.2d 159 (Tex.Crim.App.1988), cert. denied, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988), the Texas Court of Criminal Appeals gave the standard for determining probable cause. It held that Article I, Section 9 of the Texas Constitution and the Fourth Amendment of the Federal Constitution are "in all material aspects the same." *Id.* at 162. Thus, the "totality of the circumstances" test, as espoused by the Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 rehearing denied, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983), is the proper analysis for both state and federal constitutional challenges. Under this analysis,

> the task of the issuing magistrate is to make a practical common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... The magistrate should not be bound by standards such as proof beyond a reasonable doubt or by a preponderance of the evidence. The magistrate's sole concern should be probability.

*Johnson v. State,* 803 S.W.2d 272, 288 (Tex. Crim.App.1990).

In *Gates*, the Court moved away from a strict application of the two-pronged analysis of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). While recognizing that an informant's veracity and reliability are very important considerations, the Court stated that the magistrate should not give "undue attention" to these "isolated issues that cannot sensibly be divorced from the other facts" presented to him. *Gates*, 462 U.S. at 235, 103 S.Ct. at 2330. In essence, *Gates* permits a balanced assessment of the relative weight of all the various indicia of reliability concerning an informant's tips. *Id.* at 234, 103 S.Ct. at 2330.

Appellant argues that the affidavit in the instant case fails under the "totality of the circumstances" analysis in that it does not set forth the basis of the informant's knowledge. It lacks detail concerning specific bets the informant placed with appellant, how much he bet, whether he won or lost, and how payments were made on wins or losses. Appellant further complains that the officers never attempted to record any of the phone calls between appellant and the informant, nor did they claim to have seen them together, either at appellant's place of business or anywhere.

■ An appellate court's review of the sufficiency of an affidavit is not *de novo*. The magistrate's determination of probable cause should be given great deference by the reviewing court. *Johnson v. State*, 803 S.W.2d at 289, citing *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. "The traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236, 103 S.Ct. at 2331 (citing *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), overruled on other grounds, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)). The affidavit here provides, in pertinent part, that:

Sgt. Plaster advised your affiant that this informant had stated ... that Griese had provided the informant with telephone number 342–7776 or 558–2222 whenever the informant wanted to place wagers. [W]hen he, the informant, dialed, the telephone number of 342–7776 or 558–2222 ... [he] would be speaking to a person by the name of Jerome Griese.... Griese would provide the current betting line information and ... would accept any wagers the informant wished to make. The informant stated that Griese charges an additional 10% on the amount wagered on losing straight type wagers made by the informant. If the informant wagers $100.00 and the wager is lost, the informant is required to pay Griese $110.00. The informant told Sgt. Plaster that he had been placing wagers with this bookmaking operation for several weeks. The informant told Sgt. Plaster he had been wagering with Griese on both professional and college basketball games. The informant also told Sgt. Plaster that he knows Jerome Griese personally and that Griese drives a red Corvette.

The affidavit also states that the informant told Sgt. Plaster that he placed bets with appellant on at least fourteen specific dates on college and/or professional basketball games to be played on the same day on which the bets were made.

■ This information is very similar to that contained in the affidavit at issue in *Elliott v. State*, 681 S.W.2d 98 (Tex.App.—Houston [14th Dist.] 1984) (hereinafter *Elliott I*), aff'd, 687 S.W.2d 359 (Tex.Crim. App 1985). In *Elliott I*, the affidavit stated that the informant told the officer that he had been personally calling and placing bets with the defendant for several months and that the defendant would give current line information on both college and professional football games as well as receive and record any bets which the informant wished to place with him. The informant also gave a physical description of the defendant to the officer. This court held that that affidavit sufficiently stated the informant's knowledge. *Elliott I*, 681 S.W.2d at 102. The affidavit here does also. Al-

though it does not give the detail that appellant contends it should have, it is obvious that the informant had personal knowledge of appellant's bookmaking activities.

Appellant further contends that the instant affidavit fails to give facts showing the veracity of the informant. He claims that because the affiant did not specifically describe the informant as "reliable," "believable," or "credible," the informant's veracity should be seriously questioned. The affidavit in the instant case provides that:

> Sgt. Plaster told your affiant that he, Plaster, had spoken with a confidential informant who has provided information in the past regarding illegal gambling activity and based upon the information received from this informant numerous arrests and convictions have been made.

This statement is sufficient to establish the veracity of the informant. In *Elliott I,* the affidavit stated that the informant had "given your affiant information on several past occasions concerning criminal activity and on each and every past occasion your affiant found this information to be true and correct." Both this court and the Court of Criminal Appeals held that this statement established the reliability of the informant. *Elliott I,* 681 S.W.2d at 102; *Elliott II,* 687 S.W.2d at 362. The affidavit here is not significantly different from that in *Elliott I.*

Appellant argues that the statement concerning the information provided by the informant in the past could have referred to a single prior occasion in which the informant had provided information that led to multiple arrests. Affidavits in support of search warrants should be interpreted in a common sense and realistic manner. *Bower v. State,* 769 S.W.2d 887, 902 (Tex.Crim.App.1989), cert. denied, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989). Such a reading of the affidavit shows that the informant had provided information on more than just one occasion and that such information resulted in arrests and convictions for gambling offenses. Appellant also contends that by failing to state that the information provided in the past proved to be "true and correct," the affiant does not deny that the informant gave him false and misleading information in the past. Such a tortured reading is not based on common sense. The instant affidavit sufficiently shows the veracity of the informant.

Appellant also argues that the affidavit gives insufficient information to support a finding of probable cause under a "totality of the circumstances" analysis. The affidavit shows that the information given by the informant was corroborated by independent police inquiries. The phone numbers and description of the automobile belonging to appellant were verified. The police obtained specific billing information for the cellular phone from which numerous calls were made to appellant's home and to sports service numbers. Based on this information, the magistrate had more than sufficient evidence from which to conclude that gambling paraphernalia would probably be found in appellant's office. He had a "substantial basis" for finding that probable cause existed under a "totality of the circumstances" analysis. Appellant's point of error is overruled, and the judgment of the trial court is affirmed.