COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




ROBERT CORTEZ MATLOCK,


 Appellant,


v.



THE STATE OF TEXAS, 


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


 No. 08-07-00225-CR
 

Appeal from the


380th Judicial District Court


of Collin County, Texas 


(TC# 380-82614-05) 



O P I N I O N


 Robert Cortez Matlock appeals his conviction for aggravated robbery. A jury sentenced
Appellant to 8 years' imprisonment. On appeal, Appellant challenges the trial court's denial of
his motion to suppress evidence and the sufficiency of the evidence supporting the conviction. Scott Coxwell was the manager at Mr. Jim's Pizza in Plano on July 8, 2005. 
Mr. Coxwell testified that approximately ten minutes before closing, a man wearing a ski mask
and gloves entered the store. The masked man pointed a gun at Mr. Coxwell and a co-worker,
yelled at them to get on the floor, and demanded the money from the register. The robber placed
the gun to Mr. Coxwell's head, while the other employee pulled the cash out of the register. The
employee handed the cash over the counter to the robber who then turned and ran out of the
store. Immediately afterwards, Mr. Coxwell called 9-1-1. The description he gave to Plano
police was of a male, 5' 10" to 5' 11", between 200 and 205 pounds, with distinctive eyes. The
individual's eyes were the only part of the robber's face not covered by the mask and the only
facial feature Mr. Coxwell could identify. However, Mr. Coxwell was also able to describe the
gun used during the crime as a chrome revolver with a wood grain grip.

 There was also testimony that there had been a rash of stolen vehicles in the area around
the Plano neighborhood where Appellant lived. On July 15, one week following the robbery at
Mr. Jim's Pizza, the home of Dan and Sandra Self was burglarized. Mr. and Mrs. Self awoke to
discover their two vehicles, a 2000 Chevrolet Tahoe and a 2005 Nissan Pathfinder, were missing
from their garage. The couple reported the thefts, and police investigators entered the Tahoe and
Pathfinder's information into a police database so that officers could identify the stolen vehicles
if they were encountered.

 Two days later, on July 17, the Pathfinder was located not far from the Self's home and
police immediately set up surveillance. At approximately 10:45 p.m., the surveilling officer,
Officer John Hoffman, saw a Mitsubishi Endeavor pull up beside the Pathfinder and saw two
individuals leave the Mitsubishi and get into the Pathfinder. The officer was spotted in his
unmarked patrol car, the Mitsubishi and the stolen Pathfinder sped off with Officer Hoffman in
hot pursuit. Officer Hoffman testified at trial that he estimated the Pathfinder must have been
traveling between ninety and one hundred miles per hour. Moments later, the Pathfinder lost
control attempting to make a turn. The SUV jumped the curb, traveled across the yard of a
private residence, and crashed into the home. The Pathfinder's occupants fled the scene
immediately following the crash. A neighbor witnessed the two running away. She described
one of the fleeing individuals as a female and later identified that person as Emily Johnson. The
other individual in the stolen Pathfinder was later identified through DNA found on a cigar on
the driver's side floorboard as Cameron Black.

 Meanwhile, two other officers who were responding to the scene of the accident received
a dispatch to Appellant's home which was nearby where the crash occurred. The dispatcher told
the officers they were being sent to the residence of a suspect believed to be involved with the
stolen Pathfinder that had just crashed. Officer Cliff Turrubiarte was one of the officers
dispatched to Appellant's residence. After knocking on Appellant's door with no response,
another officer noticed the garage light switched on and off abruptly. The officers moved
towards the garage as the door was being raised. Once open, Officer Turrubiarte saw a
Mitsubishi Endeavor with several occupants and Appellant standing in the doorway leading into
the house. One of the people inside the Mitsubishi was identified as Emily Johnson, the female
who had fled from the scene of the accident. The Mitsubishi's front passenger was Brandon
Ware. Mr. Ware later admitted to participating in the burglary of Mr. Jim's and the Self home.

 Two days after the crash, Ms. Johnson and Mr. Black gave statements to Detective Jeff
Kranz of the Plano Police Department. Ms. Johnson advised Detective Kranz that about two
weeks prior, Appellant had robbed Mr. Jim's Pizza when it was about to close wearing a ski
mask. She stated that Brandon Ware was driving the car that night, and that Mr. Black, another
girl, and herself were involved in the plan. They dropped Appellant off at Mr. Jim's and met
back at Appellant's house after the robbery.

 Mr. Black informed Detective Kranz that he and Appellant had stolen a Chevrolet
suburban from a residence and left it parked on a street nearby. He also stated that Appellant
kept a black backpack containing a ski mask, gloves, and multiple sets of car keys in his
bedroom. On July 20, 2005, Detective Kranz obtained a search warrant based on information
from Emily Johnson and Cameron Black. The search of Appellant's home yielded a .32 caliber
chrome revolver with a wood grip, matching the description of the gun used in the robbery of
Mr. Jim's Pizza. The police also located a pair of gloves, a backpack, and a boot containing
several sets of car keys.

 A month following the robbery at Mr. Jim's, Plano Police Detective Billy Meeks
interviewed the manager of Mr. Jim's Pizza, Scott Coxwell. He showed Mr. Coxwell a photo of
the gun seized during the search of Appellant's garage and a photo of Appellant. Mr. Coxwell
identified the gun as the one used in the robbery, and although he could only recall the robber's
eyes, he told Detective Meeks that the eyes of the man in the photo matched those of the robber. 
Mr. Coxwell later identified Appellant during his testimony at trial as the person who robbed him
at Mr. Jim's on July 8, 2005.

 Appellant was charged with aggravated robbery, burglary of a habitation, and two counts
of organized criminal activities based on the events of July 8 and July 14, 2005. (1) Appellant was
convicted of all charges and sentenced to serve eight years' for the aggravated robbery, five
years' for burglary, and five years' for the each count of engaging in organized criminal
activities. Appellant raises two issues on appeal. In Issue One, Appellant contends the trial court
erred by denying his motion to suppress evidence because the warrant and search of his residence
was not supported by probable cause. In Issue Two, Appellant asserts the evidence is factually
insufficient to support the convictions because the accomplice witness testimony was insufficient
to identify Appellant as the perpetrator of the offenses.

 In Issue One, Appellant alleges the trial court erred in denying his motion to suppress 
evidence from the search and seizure of Appellant's residence. We review a trial court's ruling
on a motion to suppress with a bifurcated standard, giving almost total deference to the trial
court's determination of historical facts, and reviewing de novo the court's application of the law
to those facts. See Maxwell v. State, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002). When, as in
this case, the trial court does not file explicit findings of fact we will review the evidence in the
light most favorable to the trial court's ruling. Id. Appellant moved to suppress all physical
evidence discovered during the Plano Police Department's search of his residence on July 20,
2005. Appellant argued that the evidence was seized illegally because the search warrant was not
supported by probable cause. Appellant contends that Detective Kranz's affidavit was deficient
because it relies on information provided by criminal informants and was not verified before
conducting the search.

 Probable cause to support the issuance of a search warrant exists where the facts
submitted to the magistrate are sufficient to justify a conclusion that the object of the search is
probably on the premises to be searched at the time the warrant was issued. Cassias v. State, 719
S.W.2d 585, 587 (Tex.Crim.App. 1986). The Texas Code of Criminal Procedure requires that a
search warrant be supported by a sworn affidavit setting forth substantial fact establishing
probable cause. See Tex.Code Crim.Proc.Ann. art. 18.01(b)(Vernon Supp. 2008). The
affidavit must include sufficient facts to establish probable cause:

 (1) that a specific offense has been committed,


 (2) that the specifically described property or items that are to be searched for
or seized constitute evidence of that offense or evidence that a particular 
person committed that offense, and


 (3) that the property or items constituting evidence to be searched for or
seized are located at or on the particular person, place, or thing to be
searched.


Tex.Code Crim.Proc.Ann. art. 18.01(c).


 We examine the totality of the circumstances to determine whether probable causes
exists. See Dixon v. State, 206 S.W.3d 613, 616 (Tex.Crim.App. 2006); Matamoros v. State, 901
S.W.2d 470, 478 (Tex.Crim.App. 1995). When a probable cause affidavit specifies a named
informant as supplying the information upon which probable cause is based, the affidavit is
sufficient if it is sufficiently detailed to suggest direct knowledge on the informant's part. 
Wilkerson v. State, 726 S.W.2d 542, 545 (Tex.Crim.App. 1986), cert. denied, 480 U.S. 940, 107
S.Ct. 1590, 94 L.Ed.2d 779 (1987). In addition, when a named informant makes a declaration
against their penal interest in front of an officer, these circumstances indicate a substantial basis
that the informant's statements are trustworthy. See Hennessy v. State, 660 S.W.2d 87, 91 
(Tex.Crim.App. 1983).

 In this instance, Detective Kranz's affidavit states that Ms. Johnson and Mr. Black came
forward, identified themselves, and admitted to their participation in committing the charged
offenses along with Appellant. According to the warrant affidavit, both individuals advised
Detective Kranz that they participated in the robbery at Mr. Jim's Pizza, and the burglary of the
vehicles along with Appellant. Furthermore, Ms. Johnson and Mr. Black were able to describe
the items of interest, as well as the locations of the items within Appellant's residence based on
their personal knowledge.

 In sum, two separate and independent accomplice witnesses gave detailed statements
regarding the potential evidence located in Appellant's house, and their statements included
addmissions that they had both engaged in criminal activity. Therefore, based on the totality of
the circumstances, we conclude Detective Kranz's demonstrated the veracity and direct
knowledge of the witnesses and the warrant contained sufficient information on which the
magistrate could have concluded probable cause existed. Accordingly, Issue One is overruled.

 In Issue Two, Appellant alleges that the evidence was factually insufficient to support his
convictions. In a factual sufficiency review, we consider all the evidence in a neutral light. 
Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007). Evidence is factually insufficient
if: (1) the evidence supporting the verdict is so weak that the verdict seems clearly wrong and
manifestly unjust; or (2) the evidence supporting the verdict is outweighed by the great weight
and preponderance of contrary evidence, rendering the verdict clearly wrong and manifestly
unjust. Id. In addition, our review should not substantially intrude upon the fact finder's role as
the sole judge of the weight and credibility given to witness testimony. Johnson v. State, 23
S.W.3d 1, 7 (Tex.Crim.App. 2000); see also Marshall v. State, 210 S.W.3d 618, 625
(Tex.Crim.App. 2006)(factual sufficiency review still requires "due deference" be given to the
jury's determinations.

 Specifically, Appellant argues that the State failed to carry its burden to identify
Appellant as the individual who committed the offense because the State's evidence of identity
was limited to accomplice witness testimony. (2) A conviction cannot rest on the testimony of an
accomplice unless corroborated by other evidence that tends to connect the defendant with the
offense committed, and the corroboration is not sufficient if it merely shows the commission of
the offense. Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 2005). The test for determining
whether sufficient corroborating evidence exists asks whether, absent the accomplice witness
testimony, the remaining evidence tends to connect the defendant to the offense. See McDuff v.
State, 939 S.W.2d 607, 612 (Tex.Crim.App. 1997). However, the non-accomplice evidence need
not be sufficient itself to establish the accused's guilt beyond a reasonable doubt. Hernandez v.
State, 939 S.W.2d 173, 176 (Tex.Crim.App. 1997). Proof that connects appellant to a weapon
used in the offense is sufficient corroborative evidence. See Cockrum v. State, 758 S.W.2d 577,
582 (Tex.Crim.App. 1988). In determining the strength of a particular item of non-accomplice
evidence, we examine: (1) its reliability or believability; and (2) the strength of its tendency to
connect the defendant to the crime. Johnson v. State, 234 S.W.3d 43, 54 (Tex.App--El Paso
2007, no pet.), citing Herron v. State, 86 S.W.3d 621, 632 (Tex.Crim.App. 2002).

 Eliminating Mr. Black and Ms. Johnson's testimony from consideration, the other
evidence that tends to connect Appellant to the crime include the items seized at Appellant's
house and Manager Scott Coxwell's identification of Appellant as the robber. Mr. Coxwell was
also able to identify the gun found hidden in Appellant's house as the gun used in the robbery. 
Having eliminated the accomplice witness testimony from our analysis, we conclude that the
non-accomplice evidence, does tend to connect Appellant to the offense sufficiently to
corroborate the testimony of the accomplice witnesses. Accordingly, Appellant's factual
insufficiency argument fails, and Issue Two is overruled.

 As a final matter, by cross-point, the State requests that this Court modify the trial court's
judgment which orders Appellant's aggravated robbery, engaging in criminal activities, and
burglary sentences to run consecutively. The State concedes that Appellant was not convicted of
the types of offenses which require consecutive sentencing. See Tex.Penal Code Ann.
§ 3.03(b)(Vernon Supp. 2008)(when an accused is convicted of multiple offenses arising out of
the same criminal episode sentences run concurrently unless the sentence is for an intoxication,
solicitation of a minor, or sexual offense). This Court has the authority to modify a trial court's
judgment and affirm the judgment as modified. See Tex.R.App.P. 43.2(b). We therefore modify
the trial court's judgment and order Appellant's sentences to run concurrently.

 Having overruled both of Appellant's issues, we affirm the judgment of the trial court as
modified.



September 16, 2009

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., McClure, and Carr, JJ.

Carr, J. (Not Participating)


(Do Not Publish)
1. Appellant's convictions for burglary of a habitation and organized criminal activities are
addressed in two companions to this appeal. See Matlock v. State, No. 08-07-00226-CR
(Tex.App.--El Paso Sept. 16, 2009, no pet.h.) and Matlock v. State, No. 08-07-00227-CR
(Tex.App.--El Paso Sept. 16, 2009, no pet.h.).
2. The indictment charged Appellant with "intentionally and knowingly, while in the
course of committing theft of property and with intent to obtain and maintain control of said
property, threaten and place Scott Coxwell in fear of imminent bodily injury and death, and the
defendant did then and there use and exhibit a deadly weapon, namely: a firearm, that in the
manner and means of its use and intended use was capable of causing death and serious bodily
injury . . . ."