THE STATE OF OHIO, APPELLANT, *v.* MEADOWS, APPELLEE.█

CLIFFORD F. BROWN, J., concurring. I abhor child pornography equally with all my brother justices as variously expressed by them. However, the only issue for determination, and a narrow one at that, is whether R.C. 2907.322(A)(5), which prohibits possession or control of any material showing a minor engaging in sexual activity, is constitutional. The majority opinion articulately and cogently analyzes this issue and the *Stanley* and *Ferber* holdings of the United States Supreme Court which, under the principle of judicial obedience, alone govern and control our judgment on this issue. As the result of that excellent discussion, Chief Justice Celebrezze has clearly, unequivocally and unambiguously stated the conclusion and judgment that R.C. 2907.322(A)(5)—as accurately set forth in the syllabus—is constitutional. The majority opinion makes it clear that the principles contained in *New York* v. *Ferber* (1982), 458 U.S. 747, require the judgment reached, and that *Stanley* v. *Georgia* (1969), 394 U.S. 557, can be harmonized therewith. That is also clearly revealed in the syllabus.

Many inexplicable, grandiose statements, obviously designed for grandstanding effect, are contained in the concurring opinions. Such statements are a pretense at jurisprudential erudition in a case receiving widespread public attention, fulfilling an urge for public recognition and acclaim. It is in an obvious effort to share with the majority opinion the judicial glory in upholding the child pornography law. The obvious impression is that an opinion-writing field day was proclaimed and law clerks were inspired to run rampant, citing and discussing a multitude of cases decided by the United States Supreme Court on the subject of obscenity, and otherwise, totally irrelevant to the narrow issue in this case: the constitutionality of R.C. 2907.322(A)(5) as measured by *Stanley* and *Ferber*.

For example, one concurring opinion finds it necessary to discuss contraband and the "clear and present danger" test, while another is com-

pelled to discuss what is or is not "obscene," when throughout this action both the parties and all the courts involved have proceeded on the basis of the defendant's admission that the materials in question were obscene; no *Miller* issue exists in the instant cause, thus any *Miller* analysis is irrelevant. (See *Miller* v. *California* [1973], 413 U.S. 15.)

A third concurring opinion presents a dissertation on the right of privacy, the cornerstone of which is the use of *Griswold* v. *Connecticut* (1965), 381 U.S. 479, in a manner completely inconsistent with the law as stated by that case.

It is well-established in our nation's jurisprudence that *"fundamental [to our free society] is the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy." Stanley* at 564. (Emphasis added.) There is no question that a right of privacy exists. *Griswold* at 485 (see, also, the cases cited therein); yet, in useless surplusage and unfortunate dicta, a concurring opinion quotes at length from the *dissent* in *Griswold* in an attempt to single-handedly overrule the law of our nation as expounded by our nation's highest court. It is obvious that the mandate of the United States Supreme Court in declaring the existence of a right to privacy *is the law,* while a dissent which contradicts that mandate *cannot* be the law. The mere personal opinion of a state court justice does not change that fact.

Furthermore, even if the law, as *correctly* stated by the *majority* in *Griswold,* is viewed, *Griswold* is still *not relevant* to the analysis of the cause now before the court. The essence of the privacy interests in *Griswold*—that married persons may not constitutionally be declared criminals for using contraceptive devices—"concern[ed] a relationship lying within the zone of privacy created by several fundamental constitutional guarantees." *Griswold* at 485. (Emphasis added.) *Stanley,* however, is "firmly grounded in the *First Amendment." Bowers* v. *Hardwick* (1986), 478 U.S. ___, 92 L. Ed. 2d 140, 148-149 (emphasis added). Thus, there is no *Griswold* issue in this case and any analysis involving *Griswold* is too remote from the issue in the case at bar to have any relevance.

In short, it is my view that the three other concurring opinions are a studied effort at obfuscation rather than clarification. That is caused by a discussion or a citation of the following cases irrelevant to our unanimous decision, namely: *Beauharnais* v. *Illinois* (1952), 343 U.S. 250; *Winters* v. *New York* (1948), 333 U.S. 507; *Chaplinsky* v. *New Hampshire* (1942), 315 U.S. 568; *Miller* v. *California* (1973), 413 U.S. 15; *Schenck* v. *United States* (1919), 249 U.S. 47; *United States* v. *Thirty-seven Photographs* (1971), 354 U.S. 476; *Ginsberg* v. *New York* (1968), 390 U.S. 629 [44 O.O.2d 339]; *Roth* v. *United States* (1957), 354 U.S. 476 [14 O.O.2d 331]; *Jacobellis* v. *Ohio* (1964), 378 U.S. 184 [28 O.O.2d 101]; *Paris Adult Theatre I* v. *Slaton* (1973), 413 U.S. 49; *Rowan* v. *United States Post Office Dept.* (1970), 397 U.S. 728; *Prince* v. *Massachusetts* (1944), 321 U.S. 158; *Griswold* v. *Connecticut* (1965), 381 U.S. 479; *Boyd* v. *United States* (1886), 116 U.S. 616;

*Payton* v. *New York* (1980), 445 U.S. 573; *Bowers* v. *Hardwick, supra*; *Carey* v. *Population Services Internatl.* (1977), 431 U.S. 678; *Zablocki* v. *Redhail* (1978), 434 U.S. 374; *Moore* v. *East Cleveland* (1977), 431 U.S. 494; *FCC* v. *Pacifica Found.* (1978), 438 U.S. 726.

I write this concurring opinion solely for the purpose of informing the legal researcher not to waste his time wading through the reams of irrelevant legalese in the concurring opinions. These concurring opinions add nothing to the holding we have made in this case, as contained in the syllabus and the cogent analysis in the majority opinion. The only beneficiaries gaining from this opinion-writing orgy are the law book publishers, and the losers are the lawyers and law libraries which pay for this superfluous opinion-writing exercise. It is unfortunate that the practicing lawyer must provide valuable bookshelf space and pay so dearly for many useless official opinions as the result of so many drippy judicial pens.

A prudent exercise of judicial restraint in this case would have been a unanimous approval of the syllabus and the majority opinion, and the writing of no concurring opinions.

With reference to the syllabus I add an additional observation. When the majority opinion of Chief Justice Celebrezze was considered for approval at this court's official conference, on October 7, 1986 concurring Justices Douglas, Wright and Holmes refused to give their approval to the identical syllabus which still appears on this case. This left the majority opinion with only three votes and would have forced the majority opinion into a *per curiam* opinion without any credit or designation that Chief Justice Celebrezze authored the opinion. The desire to achieve such a result was the ulterior purpose of their vindictive abstention from the syllabus.

After the three foregoing concurring Justices refused to support the syllabus, I changed my vote from a dissent to a concurrence to preserve the syllabus by a majority of four Justices and most importantly to send a clear and unambiguous precedent to the Bench and Bar of Ohio.

After the syllabus was adopted on October 7, 1986 by the required majority of four Justices consisting of Chief Justice Celebrezze and Associate Justices Sweeney, Locher and C. Brown, the three dissident concurring judges, one at a time, first Justice Wright on October 20, 1986, then Justice Holmes on November 12, 1986 and finally Justice Douglas on November 13, 1986, without notifying the majority joined as the three who now "separately concur in the syllabus and judgment."

I add a word of caution. I am not certain that a majority of the United States Supreme Court would agree with our unanimous conclusion and judgment in this case, if it reviewed the issue herein on the merits, that the Ohio child pornography law is constitutional. We rely heavily on fn. 11 in the opinion of Justice Marshall in the *Stanley* case for our conclusions.[33]

---

[33] *Stanley* v. *Georgia* (1969), 394 U.S. 557, fn. 11, at 568, reads in its entirety:
"What we have said in no way infringes upon the power of the State or Federal Govern-

We conclude that fn. 11 removes possession of child pornography from the holding in *Stanley*. A careful reading of fn. 11 reveals that it does not mention child pornography or even obscene material of any kind. In fact, the only reference to printed matter in fn. 11 concerns that which is of importance to our national security. If the United States Supreme Court were to apply the holding in *Stanley, supra,* the Ohio child pornography law would be unconstitutional. If it were to apply *Ferber* as an exception to *Stanley,* the Ohio child pornography law would be constitutional. The difficulty in applying *Ferber* is that it concerned a statute which dealt solely with production and promotion of any performance involving sexual conduct by children, and did not concern a statute dealing solely with private possession of child pornography as does the Ohio child pornography statute in this case. We can only speculate that the United States Supreme Court would extend the list of exceptions in fn. 11 of *Stanley* to include possession of child pornography and thereby make prohibition of its possession constitutional.

---

ment to make possession of other items, such as narcotics, firearms, or stolen goods, a crime. Our holding in the present case turns upon the Georgia statute's infringement of fundamental liberties protected by the First and Fourteenth Amendments. No First Amendment rights are involved in most statutes making mere possession criminal.

"Nor do we mean to express any opinion on statutes making criminal possession of other types of printed, filmed, or recorded materials. See, *e.g.,* 18 U.S.C. § 793(d), which makes criminal the otherwise lawful possession of materials which 'the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation * * *.' In such cases, compelling reasons may exist for overriding the right of the individual to possess those materials."