Gustavo Alberto ROLDAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 84 122 CR.

Court of Appeals of Texas,
Beaumont.

Oct. 16, 1985.

Rehearing Denied Nov. 7, 1985.

Carl Masztal, Miami, Fla., for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty.,
Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

A jury convicted Appellant of possession of more than 400 grams of cocaine and sentenced him to life imprisonment. A $50,000 fine was assessed.

On November 2, 1983, a drug enforcement officer received information in his Houston office from a confidential informant. The confidential informant had been reliable, credible, and accurate in prior cases. The informant advised that a 1983 light blue Chevrolet pickup truck with Texas License YF–9212 was presently located at a certain restaurant in southwest Houston. The informant said this pickup contained cocaine and money. The contraband would have been stored in a secret welded compartment below the bed of the Chevy pickup. The informant advised that, because of this secret compartment, the spare tire of the truck would be placed at an unusual angle. Further, the truck was scheduled to leave for Florida within possibly fifteen minutes time. The informant related that the pickup would be occupied by one to three Columbian males. The informant had not actually seen the cocaine or the secret welded compartment. He had received this information from another person whose identity was not revealed. The reliability and credibility of the unidentified subinformant was unknown. Upon receiv-

ing this information, the drug enforcement agency dispatched enforcement personnel to the Los Brazos Restaurant in southwest Houston. By the time the dispatched agents arrived the truck had departed.

The Houston enforcement officer contacted Agent David Hammonds of the Department of Public Safety. He was stationed in Beaumont. Hammonds was given a detailed description of the truck. Hammonds was requested to set up an intensive lookout on IH 10 and to have the truck stopped if he identified the truck. The truck was stopped at 6:22 p.m. on Interstate 10 at the College Street overpass in Beaumont on November 2, 1983. The Appellant was driving the truck. He was the only occupant. The Appellant was ordered to exit the truck. He complied. He was handcuffed and arrested. There was nothing illegal or unlawful about *the manner in which the truck was being driven.* The appearance of the truck was normal except for the tilted spare tire which was at an unusual angle. No contraband or cocaine was seized or removed either from the cab or the open bed of the truck.

Following the arrest of the Appellant, a California driver's license was produced. The California license revealed the picture and description of Appellant, but bore the name of Victor Ramon Franqui, rather than Gustavo Alberto Roldan. From this record it is clear that Gustavo Alberto Roldan is the correct name of the Appellant.

The D.P.S. officer said that for the safety of the motoring public and the safety of the stopped truck, as well as the security of the same, it was removed to headquarters of the Department of Public Safety in Beaumont. Thereafter, certain officers called for a narcotics detection dog and his handler. The dog and his handler were obtained from the Beaumont Police Department. The narcotics detection dog located the cocaine by his actions and scratches. The canine alerted and located the concealed, secret welded compartment underneath the truck.

The officers obtained the assistance of a Spanish-speaking agent attached to the Texas Alcohol Beverage Commission. He was John Aleman. He identified himself to the Appellant, asking in Spanish if the Appellant was the same person on the license. Aleman said he advised Roldan of his Miranda rights in Spanish. Appellant acknowledged understanding these Miranda rights. Aleman stayed with Appellant while some of the officers obtained a search warrant after the dog located the cocaine. When the other officers returned with the search warrant and actually began to search the truck, the Appellant asked Aleman if he could: "[S]how him where his boss hid the drugs". It was then approximately 11:00 p.m. Aleman said the Appellant told him the picture on the California driver's license was that of the Appellant, but that his name was not Victor Ramon Franqui.

The officers had obtained a search warrant for the entire truck from a district judge in Beaumont. In executing the same a welded compartment underneath the bed of the pickup truck was found. Four metal bolts were removed. The officers recovered 30 packages of cocaine, weighing approximately two pounds each, totalling 60 pounds of cocaine which was later analyzed as nearly pure cocaine.

The officers also found an Eastern Airlines ticket inside the cab of the truck. The ticket was for a certain flight from San Francisco to Houston International Airport, arriving in Houston at 7:16 a.m. The boarding pass, dated November 2, which was also found, indicated the same flight number as the ticket. The name appearing on the boarding pass and the ticket was Victor Franqui. The original informant gave the information to the drug enforcement officer in Houston on November 2, 1983. Appellant was given a copy of the search warrant written in English. In *December of 1983* the Jefferson County Grand Jury, by indictment, charged the Appellant with aggravated possession of cocaine in excess of 400 grams on November 2, 1983, contrary to *TEX.REV.CIV. STAT.ANN. art. 4476–15, sec. 4.02(b)(3)(D)*

and *sec. 4.03(c)(d)(3)*, effective August 29, 1983.

■ Counsel for the Appellant timely filed a motion to suppress all statements made by Roldan and all physical evidence, including the cocaine seized from the welded compartment under the truck bed. The first ground of error contends that all physical evidence seized should have been suppressed by the trial court, since it was obtained as a result of an unconstitutional seizure or arrest.

The State contends, or at least argued at oral submission, that the Appellant was merely stopped. Appellant contends that he was arrested and subjected to a "seizure". We agree with the Appellant. The enforcement officers testified they arrested the Appellant. Appellant vehemently argues that since there was an impermissible arrest and seizure, then all evidence obtained after that time could not be introduced before the jury. Appellant argues this includes the physical evidence, including the cocaine, found after the search warrant was obtained.

In essence, Appellant says that an arrest or seizure or a police confinement that extends further than a limited stop and frisk cannot be constitutionally permissible unless justified by probable cause. The arrest and the seizure of the Appellant was admittedly without written warrant.

We find that the arrest or seizure of the Appellant was made with probable cause, because all the surrounding facts and circumstances that were within the enforcement personnels' knowledge and of which the enforcement agents had reasonably trustworthy information, were sufficient to warrant a man of reasonable and prudent caution to hold the belief that an offense had been committed or was presently being committed by the person arrested and seized. *See Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). *See also Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).

In *Carroll, supra,* the court wrote, at page 149, 45 S.Ct. at 283:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The 4th Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens."

In *Brinegar, supra,* the court wrote 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. at page 1890:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt' ... as Marshall, Ch.J., said for the Court more than a century ago in *Locke v. United States*, 7 Cranch (US) 339, 348, 3 L ed 364, 367. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States*, 267 US 132, 162, 69 L ed 543, 555, 45 S Ct 280 [288], 39 ALR 790."

We think the Appellant's contentions, in his motion to suppress the cocaine as evidence, is answered by *Hennessy v. State*, 660 S.W.2d 87 (Tex.Crim.App.1983) and *Illi-*

*nois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In *Gates, supra,* the Supreme Court criticized and qualified the strict application of the two-pronged test discussed in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The Court agreed that the reliability, credibility, and veracity and basis of knowledge of the informant are important and highly relevant factors in determining the value of the informant's report. But in *Gates, supra,* the Court wrote 462 U.S. at 230, 233 and 238, 103 S.Ct. at 2327, 2329 and 2332, 76 L.Ed.2d at pages 543, 545 and 548:

> "... [T]hese elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case...."
>
> ....
>
> "Instead, they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability....
>
> ....
>
> "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, *there is a fair probability that contraband or evidence of a crime will be found in a particular place....*" (Emphasis added)

In *Hennessy, supra,* the Court of Criminal Appeals wrote, at page 90:

> "We will determine the validity of the search warrant in the instant case according to the 'totality of the circumstances' analysis of *Illinois v. Gates,* supra."

From the unusual facts of this case we think the same reasoning should apply to the arrest or seizure of the Appellant. From the "totality of the circumstances" test we find the drug enforcement officer, as well as Agent Hammonds, acted and proceeded in such a way that the arrest was based on probable cause as was the search warrant.

Compellingly controlling is *Eisenhauer v. State,* 678 S.W.2d 947 (Tex.Crim.App. 1984). There, we perceive, the court decided that the standard for determining probable cause is the same and is applicable to both arrest warrants and search warrants. Moreover, the court wrote: "It is clear that the 'totality of the circumstances' standard of *Gates* is applicable to warrantless arrests and searches". In *Illinois v. Gates, supra,* the Bloomingdale Police Department acted upon an anonymous handwritten letter received through the mail. The anonymous handwritten letter was referred to Detective Mader who decided to pursue the tip from an unidentified, unknown letter writer. The fact that there was an unknown, unidentified informant did not defeat probable cause under the totality of circumstances approach. Our case, subjudice, demonstrates a sounder showing of probable cause. The main informant was known to the DEA agent and had been reliable and accurate and possessed a solid basis for his knowledge or information in past cases. Indeed, his "tips" this time were extremely accurate even down to the exact and correct numbers on the license plate. Following *Illinois v. Gates, supra,* and *Eisenhauer v. State, supra,* we squarely and sanguinely hold that the fact that the reliability and credibility of the subinformant was unknown did not destroy probable cause for the arrest. Certainly these factors could not destroy the probable cause for the issuing of the search warrant.[1]

■ The next ground of error contends that the trial court erred in refusing to suppress an oral statement of Appellant. Aleman, the Spanish-speaking officer, de-

---

1. See *Whaley v. State,* 686 S.W.2d 950 (Tex.   Crim.App.1985).

nied that the oral statement was the result of any questioning or interrogation. Aleman swore that the Appellant blurted out the statement: "Can you show me where the boss hid the drugs." The objection was general in nature. Under this record, we find that it was within the trial judge's discretion to admit the oral statement under *TEX. CODE CRIM.PROC.ANN. art. 38.22, sec. 5* (Vernon 1979 and Vernon Supp.1985). Certainly no abuse of the trial court's discretion is shown. This alleged error is overruled.

■ The Appellant's last ground of error contends, in a general way, that the State's attorney, in his closing argument to the jury, made prejudicial and inflammatory remarks to the jury. We find that this ground of error is too broad and too general as well as being multifarious. In all probability it should not be considered. However, we know that the first two argued and briefed objections concern the prosecutor's oratory to the effect that the Appellant's family would be taken care of and that a drug problem exists in Jefferson County. In many instances, the trial judge immediately sustained Appellant's objections and strictly and forcefully instructed the jury to disregard the argument. We hold that the court's unequivocal instruction overcame any possible harm or prejudice, if any, caused by these arguments. No reversible error is shown.

We have carefully considered the other briefed and argued propositions concerning the prosecutor's oratory. They demonstrate no reversible error.

All of the Appellant's grounds of error are overruled. We affirm the judgment and sentence below.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. The majority correctly holds that the stopping of appellant on the interstate was an arrest or "seizure". The majority further holds that probable cause existed for the arrest. I disagree.

The majority admits the information received by the Beaumont Police Department came from a DEA agent. That agent received his information from an informant who received his information from a subinformant. The reliability and credibility of the subinformant was unknown. The basis of the subinformant's information was unknown. It was only the information of the subinformant that could, in any manner, create probable cause. I would hold that the facts in this case do not meet the requirements of *Gates, supra,* and *Hennessy, supra.* Appellant's first ground of error should be sustained.