**Winsor Thomas SAVERY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 88 104 CR.**

Court of Appeals of Texas, Beaumont.

March 8, 1989.

As Corrected March 16, 1989.

Dexter M. Patterson, The Woodlands, for appellant.

Carole Clark, Conroe, for appellee.

## OPINION

BROOKSHIRE, Justice.

The Appellant, Winsor Thomas Savery, takes the position that he is appealing from a denial of an application for a writ of habeas corpus. The denial of this writ was entered by the County Court at Law # 1 of Montgomery County on April 8, 1988. The applicant had been previously convicted in the County Court at Law # 1 of Montgom-ery County, in a jury trial, for the possession of child pornography.

The transcript from the County Clerk was not received in the designated period of time. However, the counsel for the Applicant or Appellant obtained an extension of time for filing the Statement of Facts. Appellant, or Applicant, concedes that the transcript had not been filed timely with the Appellate Clerk and that even the grace period for filing such had expired on September 15, 1987.

Later, there was a Petition for Discretionary Review filed with the Court of Criminal Appeals which was denied in December of 1987. Our Court of Appeals issued its mandate on January 13, 1988. Applicant concedes that his conviction had become final and he filed an Application for Writ of Habeas Corpus on February 23, 1988. The trial court denied his post-conviction Application for Writ of Habeas Corpus.

Savery's first point of error is:

"The judgment below is void because it was obtained in violation of *Stanley v. Georgia,* 394 US 557, 22 L.Ed.2d 542, 89 S.Ct. 1243 (1969)."

Savery argues that this prosecution, simply and unequivocally, is specifically prohibited by *Stanley v. Georgia, supra.* He argues that the prosecution began with the County Attorney's office and the Sheriff's office asking the District Judge for a search warrant to obtain obscene material *from the Appellant's home.* Savery maintains he can possess child pornography legally, if it is *in his home.* There were no allegations, he says, in the search warrant, that there was any type of distribution or commercial obscenity but that simply the defendant [Appellant] was in possession of this pornography of children in his home, which is protected, he says, by the First Amendment.

Savery filed two motions to suppress after he was actually charged with possession of child pornography. Both motions were overruled. Savery adamantly declares that all the material seized was taken from the defendant's home and, further,

that there was not one item of any alleged child pornography that was not *seized at Savery's home.*

The position taken by Savery under his Point of Error One, demonstrates that his sole defense *is that the child pornography was located in the defendant's home.* Tacitly Savery acquiesces that, if the child pornography had been located in some place other than his own home, then the charge and conviction would be valid and the conviction would not be contra to *Stanley, supra.* *Stanley, supra,* is the authority relied upon by Savery to sustain his point of error one.

Upon oral submission of the case, the applicant took the position that the paramount issue was a First Amendment right. We conclude that the case sub judice is different and meaningfully distinguishable on the facts from the case of *Stanley, supra.* The child pornography statute is a separate and distinct legislative enactment and a separate and distinct concept which is treated differently under the First Amendment of the U.S. Constitution.

*New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), dealt directly with the issue of child pornography and its interplay with the First Amendment protections. In *Ferber, supra,* the Supreme Court held that the First Amendment, basically, does not forbid a state from prohibiting child pornography. Even the possession of child pornography may be prohibited. In capsule form, the high court took the position that the legislative intent and purposes in enacting the statute, which protects and safe-guards the welfare of children of tender age, are tested by different criteria and such statutes on child pornography pass muster under the First Amendment. A statute prohibiting child pornography, therefore, generally, is constitutionally permissible. There is a compelling, overriding interest in the states to safeguard the well-being, safety and morals of a minor which does, indeed, justify prohibitive legislation, disallowing child pornography. In *Ferber, supra,* the court set out, in 458 U.S. 747, at page 757, 102 S.Ct. 3348, at page 3354, 73 L.Ed.2d 1113, at page 1122, as follows:

"[We] have sustained legislation aimed at protecting the physical and emotional well-being of youth *even when the laws have operated in the sensitive area of constitutionally protected rights....*" (Emphasis added)

The Legislature of our State enacted a child pornography statute that prohibits the possession of material which contains, substantially, a film image that visually depicts a child younger than 17 years of age at the time the film image of the child was made, who is engaging in sexual conduct. *TEX. PENAL CODE ANN. sec. 43.-26* (Vernon Supp.1989).

In other words, there is an important distinction as to child pornography and general obscenity and the States' governments have a greater area of legislative prerogative *in prohibiting child pornography.* Savery argues that this type of material should be treated as if it were general obscenity rather than child pornography. It is obviously logical and evident that the mere possession of this type of material or this type of film, or picture, necessarily has been created by a market which, in turn, has its foundation in the harmful sexual exploitation of children of tender age. If possession of this sort of film, which depicts a young child engaging in sexual conduct, is constitutionally protected, the same will create a demand for such child pornography which will bring about a tragic supply. In sum, children of tender age would be exploited sexually and otherwise to their extreme, long-lasting detriment. These children would be badly emotionally scarred, inter alia. To sustain Savery's position (as to child pornography and involving child pornography) would simply eviscerate *Ferber, supra.* And, in harsh reality, to allow an individual to possess child pornography would simply defeat the State's vital and proper interest in curtailing the exploitation of young children.

A parallel case is *State v. Modeen,* 28 Ohio St.3d 64, 502 N.E.2d 634, 635, (1986). *Modeen, supra,* addressed the issue of seiz-

ing child pornography from an individual person's home based on a statute which prohibited the possession of such child pornography. In *Modeen, supra,* the following issue or question was certified to the Supreme Court of Ohio. The issue was:

"... 'Does the First Amendment to the United States Constitution prohibit the state of Ohio from enacting a criminal statute which prohibits the private possession of child pornography?' "

Ohio prevailed; Ohio's statute was upheld.

We conclude that the Ohio case of *State v. Meadows,* 28 Ohio St.3d 43, 28 Ohio St.3d 354, 503 N.E.2d 697 (1986) is the controlling Ohio decision. Chief Justice Celebrezze held that the Ohio statute which criminalizes the knowing, in-home possession of materials that show minors participating or engaging in sexual activity, masturbation, or bestiality did not violate the First Amendment. Celebrezze, C.J., further held that such a criminalizing statute is justified by the interest of a State government in protecting the privacy, health, emotional welfare and well-rounded growth of its young citizens, coupled with a State's undeniable interest of safeguarding the future of its society as a whole. Further, these State interests are strongly compelling reasons which authorize a limited First Amendment intrusion, if any intrusion exists.

The Texas Legislature has obviously determined that it was necessary to prohibit possession of child pornography in order to halt sexual exploitation and abuse of children. We, here, shall not attempt to second-guess the Legislature's judgment. The Legislature may have determined that child pornography is even more damaging to the child victim than sexual abuse or prostitution, inasmuch as the helpless child's actions are reduced and memorialized on a recording or film and that type of pornography may haunt and damage the child for many long years in the future after the original misdeed occurred. Indeed, the effect is devastating and of long duration on the child who has been photographed performing certain acts. That child must go through his adult life with the knowledge that the recording or picture or photograph or film exists and may, at some time in later years, be distributed or circulated.

■ A solemn statutory enactment of the Legislature is cloaked with a strong presumption of constitutionality. Our solemn mandate is to determine whether the Legislature's chosen statutory means runs contrary to, or unreasonably invades, First Amendment protected rights. We hold that the Texas statute is fully constitutional under the First Amendment and also constitutional as the First Amendment is made applicable to the states by the Fourteenth Amendment. We squarely hold that *TEX.PENAL CODE ANN. sec. 43.26* (Vernon Supp.1989), which prohibits possession of materials depicting images of a child participating or engaging in sexual activity, masturbation or bestiality does not violate the First Amendment or the Fourteenth Amendment. We hold further that Texas has a compelling interest in safeguarding its children's privacy and protecting those children from cruel, physiological and psychological, mental and emotional abuse resulting from sexual seduction, exploitation and mistreatment brought about and resulting from child pornography. *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), is not persuasive nor controlling. *See New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

■ The Applicant also contends that his motion for change of venue should have automatically been sustained by the court as a matter of law. We disagree. The State properly and timely filed a motion that controverted Savery's motion for change of venue. The affidavits attached thereto were sufficient, both in form and in substance; they complied with *TEX. CODE CRIM.PROC.ANN. art. 31.04* (Vernon 1966). This article sets forth the method by which the State may contest a defendant's motion for change of venue. *Article 31.04* provides the following:

"The credibility of the persons making affidavit for change of venue, or their means of knowledge, may be attacked by

the affidavit of a credible person. The issue thus formed shall be tried by the judge, and the motion granted or refused, as the law and the facts shall warrant."

We note that a qualified affiant stated that the affiants of Savery's affidavits were not credible, in that their means of knowledge of the sentiments of the general population of the residents of Montgomery County, were insufficient. The State's affidavit showed that the opposing affiants were in error as to the extent of the alleged prejudice. We conclude that the State's contravening affidavit meets the requirements of *Article 31.04*, to authorize the introduction of evidence and testimony, by the State, on the issue of prejudice against the Defendant. *Cox v. State*, 90 Tex.Crim. 106, 234 S.W. 72 (1921).

The State's motion contained affidavits of members of the community, claiming that Savery could obtain *a fair and impartial trial in Montgomery County on the offense charged against him*. An evidentiary hearing was held to determine the venue issue. There was ample evidence of sufficient probative force, offered by the State, demonstrating that Savery could obtain a fair and impartial trial in that county. The state of the record is such that the burden of proof to sustain a change of venue fell upon Savery. The burden is a heavy one. The burden is that it must be shown that there is an unlikelihood that this particular defendant could receive a fair and impartial trial in Montgomery County on the offense charged against him. *James v. State*, 546 S.W.2d 306 (Tex. Crim.App.1977). For some reason, Savery chose not to present any evidence at the venue hearing. In fact, there was no cross-examination involving the witnesses presented by the prosecution. We agree that the trial court's ruling was correct. There was no error.

We observe that Savery had available to him his full due process rights to appeal the original judgment. We affirm that it is crucial and, indeed, paramount, in the criminal justice system, that an accused who is convicted of a penal offense be allowed a right to appeal that conviction to a higher court. The accused is certainly allowed and afforded that right of appeal. That right is subject, however, to certain reasonable appellate rules. Time requirements are necessary to have an orderly administration of the appealed cases. There are certain time requirements set out in several places in the Texas Code of Criminal Procedure and the Rules of Appellate Procedure. Otherwise, the appellate process would be disorderly and, in fact, chaotic. This Ninth Court of Appeals must abide by these time limitations. They must be complied with in order to avoid the loss of meaningful and important rights of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435, reh. den. 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933, (1985). Whoever has the responsibility of appealing the case; that is, the appellate counsel, who may be different from the trial counsel, should be, and is, responsible to meet the deadlines. That counsel must make the necessary inspections of the record both as to the transcript and the statement of facts (and any other proper parts of the record) to make sure that all the necessary and relevant material is included and properly and timely filed with the correct clerks. *Gates v. State*, 543 S.W.2d 360 (Tex.Crim.App.1976). The transcript herein was due to be filed on or before August 30, 1987. On September 17, 1987, the parties to the litigation were notified by the Clerk of the Court of Appeals, for the Ninth Supreme Judicial District, that the transcript had not been filed. No motion for extension of time to file the transcript had been filed. Thereafter, on September 23, 1987, through counsel, the Appellant filed a motion for extension of time to file the transcript which necessarily, under decisional precedents, was, and had to be denied. Our court was constrained to rule it had no authority to consider this motion because of the provisions of *TEX.R.APP.P. 54(c)*. There was a second motion for extension of time to file; it was overruled. The *TEX.R.APP.P. 54(c)* mandated:

"(c) *Extension of Time*. An extension of time may be granted for late filing in a court of appeals of a transcript or

statement of facts, if a motion reasonably explaining the need therefor is filed by appellant with the court of appeals not later than fifteen days after the last date for filing the record. Such motion shall also reasonably explain any delay in the request required by Rule 53(a)."

*TEX.R.APP.P. 54(b)* is as follows:

"(b) *In Criminal Cases—Ordinary Timetable.* The transcript and statement of facts shall be filed in the appellate court within sixty days after the day sentence is imposed or suspended in open court or the order appealed from has been signed, if a motion for new trial is not filed. If a timely motion for new trial is filed, the transcript and statement of facts shall be filed within one hundred days after the day sentence is imposed or suspended in open court or the order appealed from has been signed."

Inasmuch as Savery failed to satisfy or meet the requirements of *TEX.R.APP.P. 53* and *TEX.R.APP.P. 54*, our Ninth Court of Appeals was compelled to deny the motion for extension of time to file the transcript, since all the deadlines had expired. There was no action taken on the part of the State to interfere with the Appellant's right to appeal. The Appellant's right to appeal was not infringed upon, or hampered or hindered. The bottom line in the situation was that the Ninth Court did not receive the transcript within the time prescribed by the rules; nor were the motions to extend the time filed in accordance with the rules.

We have viewed this proceeding, as we now should, as an appeal from a denial of an application for habeas corpus. However, the entire record below is now in our possession mainly by way of exhibits to the trial court's habeas corpus hearing. In an effort to save judicial time and effort, we are willing to consider the matter as an ordinary appeal, if Appellant so wishes, as he indicated at oral argument. In fairness, then, both parties would desire, we think, to rebrief. Of course, we do not require Savery to rebrief and treat his position as that of an ordinary Appellant, but we do not prohibit this procedure. Savery may

rebrief within the time allowed, being 30 days after the date of this opinion. The State may rebrief. The State, of course, can file its new brief within 25 days after the filing of the Appellant's brief. If, in their briefs, the parties require oral argument, the same will be allowed.

We stress, as stated above, that this proceeding is an appeal concerning the denial of habeas corpus. In such cases, the appellate court shall, and should, render such judgments and make such orders as the law and the facts and the matters of the individual case may indicate. It is clear from the immediately preceding paragraph that we do not order or require rebriefing as the dissenting opinion erroneously states. Further, at oral submission, the dissenter indicated that Appellant, Savery, might get what he wants, which was obviously a review of his conviction on the merits of the case. Again, we think that it would work an economy of judicial facilities to proceed pursuant to this opinion. *TEX. R.APP.P. 44.* We are not willing to conclude that the trial court, below, abused its discretion as the dissent charges.

All costs are taxed and fixed against Winsor Thomas Savery.

But, as the record now stands, and as the briefs are now submitted, the writ of habeas corpus must be denied.

WRIT OF HABEAS CORPUS DENIED.

BURGESS, Justice, concurring.

I concur in the result, *i.e.*, allowing an ordinary appeal. I question the manner by which the majority reaches its ultimate disposition. The majority "denies the writ of habeas corpus" when they are, in effect, affirming the lower court's denial. They must be affirming the lower court because they have overruled all the points of error. The majority is willing, however, to now consider the matter as an ordinary appeal, if appellant so wishes. I assume the majority means this court will allow the transcript to be filed and consider points of error concerning the underlying conviction. If my assumption is correct, this is no more than this court granting an out-of-time appeal. I do not believe *TEX.R.APP.P. 44* is

authority for this court to affirm the denial of a writ of habeas corpus and simultaneously allow an appeal.

Appellant, in the application below, alleged the transcript was not timely filed because the county clerk's office led him to believe it had been filed. Appellant produced evidence of this at the hearing below. The state did not controvert this in any manner. The majority should have sustained appellant's point of error alleging abuse of discretion by the trial court in not granting the out-of-time appeal.[1] By doing so, the majority would accomplish the same end, but would not reach the other points of error, including the constitutional questions, until the appeal on the merits. For the reasons previously stated, I concur in the result.

---

**1.** I take no position on the other points of error, because to do otherwise would be to issue advisory opinions at this stage of the proceedings.