**Winsor Thomas SAVERY, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–104 CR.**

Court of Appeals of Texas, Beaumont.

Dec. 20, 1989.

Discretionary Review Granted Feb. 28, 1990.

Dexter Patterson, The Woodlands, for appellant.

Michael R. Tiffin, Asst. County Atty., for appellee.

## OPINION

BROOKSHIRE, Justice.

Winsor Thomas Savery revisited. Basically, parts of this appeal were presented to us by way of an application for writ of habeas corpus. We denied the writ of habeas corpus in an opinion delivered March

8, 1989. A concurring opinion was filed. *See Savery v. State*, 767 S.W.2d 242 (Tex. App.—Beaumont 1989).

In this appeal the Appellant presents seven points of error.

Appellant firstly and dogmatically argues that the judgment below is void because the same was obtained in violation of *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). This first point of error is similar to a contention presented in the habeas corpus proceeding. The Appellant argues the record is clear that all of the materials seized were seized from the Appellant's home and that there was not one item of alleged child pornography introduced into evidence that was not seized actually from the Appellant's homestead. Appellant still insists that *Stanley, supra*, eviscerates the judgment. In his brief the Appellant points out that, in our original opinion denying the habeas corpus, we decided that the possession of child pornography can be regulated by the State legislature. Candidly, Appellant says he has no general disagreement with this proposition except that *possession of child pornography in the home* is protected because of *Stanley* and the First Amendment to the Federal Constitution. Appellant vehemently argues that home possession cannot be prohibited.

█ We hold child pornography is subject to State prohibition, regulation and criminalization. We hold Texas possesses power to prohibit and avert child pornography, including forbidding possession in a home. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Again, it is startlingly clear that under Savery's first point of error his sole defense is that the child pornography was located in the Appellant's home. Savery tacitly acquiesces in the proposition that if the child pornography had been located in some place other than his own homestead, then the charge and conviction would be valid and the resulting adverse judgment would not be contrary to *Stanley, supra*.

### First Amendment Rights

█ Appellant maintains that the paramount issues were his First Amendment rights. We think we correctly held that the Texas child pornography statute was and is a separate and distinct legislative enactment narrowly drafted and is a separate and distinct proper legislative prerogative which does not offend the First Amendment. We hold the First Amendment does not forbid a state of the Union from prohibiting child pornography—even its possession in a home. We determine *TEX. PENAL CODE ANN.* sec. 43.26 (Vernon 1989) is valid.

The sovereign States are empowered to regulate pornographic depictions of children. This power is soundly based. A State's interest in protecting and safeguarding the physical, psychological, mental and emotional well-being of a minor is compelling. A self-governing democracy depends for its future life on the healthy, well-rounded maturation process of its children and young people into responsible adult citizens. Indeed, the prevention of sexual exploitation and abuse of children constitutes an appropriate State objection of paramount importance. We reiterate that *Ferber, supra*, was a holding that the First Amendment does not forbid a sovereign state from prohibiting child pornography. Even the possession of child pornography may be prohibited, the possession being a first step in distribution. Certainly the sale and distribution of child pronography can constitutionally be forbidden. Hence, *TEX. PENAL CODE ANN.* sec. 43.26 (Vernon 1989) is constitutional. *See Savery v. State, supra; see and compare State v. Madeen*, 28 Ohio St.3d 64, 502 N.E.2d 634, 635 (1986).

We conclude that the Ohio case of *State v. Meadows*, 28 Ohio St.3d 43, 503 N.E.2d 697 (1986) is a well reasoned case and a parallel situation to our case sub judice. In *Meadows, supra*, the Court held that the Ohio statute which criminalizes the knowing, in-home, private possession of materials that show minors participating or engaging in sexual activity, masturbation or beastiality did not run contrary to the First Amendment to the United States Constitution. Point of error one is overruled.

### The Search Warrant Issue

■ Appellant's point of error number two advances that the trial court erred in not granting the Appellant's motion to suppress the fruits of the search warrant. The motion attacks a probable cause affidavit. Hence, the search warrant, itself, is challenged. It is fair and correct to state that upon the oral submission of the case Appellant conceded, at least partially, that the standards set out in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. U.S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) no longer set forth the correct, current standards. Appellant maintains that even the less onerous standards and tests as set out in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), were not met by the State. Appellant, therefore, contends that the State's entire case rests on the validity of the probable cause affidavit to search the Appellant's home.

A basic thrust of the argument is that the affidavit involved is without probable cause because that affidavit is based upon what an officer was told by Mr. G.W. "Bunky" Henry; and the affidavit relies on Bunky Henry's statements being credible and Bunky being credible. Although Appellant concedes that the record positively shows that Bunky Henry received his information from a person named in the affidavit, Brad Henry, Appellant argues that there was no showing in the probable cause affidavit that Brad Henry was a credible person. Hence, Appellant argues the information possessed by Bunky Henry and passed by Bunky to the affiant officer had to rest and be based upon the credibility of Brad Henry. We cannot agree. Brad's credibility, according to the Appellant, was not shown in any way in the affidavit. Again we disagree.

The Appellant additionally attacks the credibility of Bunky Henry, stating that Bunky's credibility was merely assumed by the affiant-officer because Bunky was a resident of Montgomery County and had no previous criminal record. It must be stressed in this case that the direct, first informant to the affiant-officer was known.

This case is not a situation where the informant was not disclosed to the issuing magistrate. The affiant-officer who obtained the search warrant fully disclosed the name, the address, the work, the length of residence, and the lack of any criminal record on the part of his informant, Bunky, who was disclosed to District Judge Sheehan, an independent magistrate, who issued the warrant.

### The Supporting Affidavit

The supporting affidavit was in detail. The affiant did not rely on the verbal statements of what might be termed the sub or second informant. The name, age, residence and family of the sub-informant, Brad Henry, was also known. Noteworthy is the fact that Bunky delivered certain child pornography material to the affiant. Brad had delivered this kiddie porn to Bunky. Bunky was the father of Brad. The affidavit was undergirded by more than verbal statements.

We decided in *Roldan v. State*, 698 S.W.2d 741 (Tex.App.—Beaumont 1985) *pet. dism'd*, 739 S.W.2d 868 (Tex.Crim.App. 1987), that actions taken by the officers were authorized without a written warrant of arrest even though the sub-informant's name was not disclosed and was not known to the Drug Enforcement Agency's officer in Houston. The record here is vastly different and meaningfully distinguishable. Both the named and described informant and the named and described sub-informant were disclosed in the affidavit and the affidavit made a public record. Indeed, the first informant was relying upon the materials that were brought to him by the sub-informant, his son, as well as his son's statements. Under *Illinois v. Gates, supra*, and under the totality of circumstances test, we conclude that the search warrant was based on probable cause.

### The Appellant's First Motion to Suppress

■ Additionally and as a separate ground for sustaining the search warrant, we, after having carefully read the motion to suppress as well as the hearing held

upon the same, conclude that a major thrust of the motion to suppress was based on *Stanley v. Georgia, supra, Aguilar v. Texas, supra,* and *Spinelli v. United States, supra.* We determine that no one of these three decisions is controlling or even currently dispositive of the search warrant question before us.

At the hearing to suppress, the affiant-officer, Robertson, testified that he was with the Sheriff's Department and had been assigned to the organized crime unit and his department had received information about pictorial child pornography in The Woodlands area. At the hearing to suppress when the search warrant was offered into evidence, the objection by Appellant was that the proffer was not the best evidence of the original. State's Exhibit 1 was a correct photostatic copy. When the attempt was made by the affiant-officer to explain how he had an initial involvement in the case sub judice, the objection then was that he could not testify to that because the best evidence of any contact would have to be within the four corners of the probable cause affidavit, itself. Again, the Appellant argued that only the four corners of the probable cause affidavit could be looked to under the *Aguilar* and *Spinelli* decisions. Appellant relied on *Aguilar, supra,* and *Spinelli, supra.* Thus, we think his point of error on appeal complaining of the sub-informant's lack of credibility does not comport to the objections made below.

The direct informant, Bunky Henry, was acting upon not only the words of Brad Henry, his son, but also upon the fact that Brad had gone into Savery's bedroom and had seen a large quantity of pornographic material depicting young boys engaged in sexual acts. Brad had actually taken physical possession of some examples of this material and Bunky Henry stated to the affiant-officer that Brad had brought this material to him (Bunky). Bunky delivered some of the same to the affiant-officer.

These items and materials included letters, copies of pornographic drawings, pages torn out of an October 15, 1984, edition of a paper or magazine called "Corporal" which were ads for sexual partners, as well as other pornographic materials. Terry Robertson had in his possession a booklet entitled "Bob and Dave's Love Story". The "Love Story" depicted explicit child pornography including oral sex and masturbation. We conclude that "Bob and Dave's Love Story" clearly established probable cause for the search warrant. This same "Love Story" was also introduced into evidence at the trial on the merits along with nine other State's exhibits. Bunky Henry called the affiant, the law officer, and gave the affiant those materials. Bunky stated to the affiant that Brad had taken these items from a silver chest that was full of other letters, pictures, magazines and booklets that were of a similar nature and content as the materials delivered. Brad had at one point in time found Savery's bedroom door open. He went into Savery's bedroom and obtained these materials.

The affiant, himself, had verified through the utility company that the suspect, Savery, had the power to his home address in his name and has had the power on since July of 1980. Previously, on June 30, 1986, the affiant had driven past the 14 Muskmallow address in The Woodlands and observed a red Pontiac Trans Am parked in the driveway. The license plate on the vehicle was 629MDQ. The registration of this vehicle was to the suspect, Winsor Savery.

Another important consideration is these matters were presented to a district judge, an independent magistrate of a different branch of the government, who passed on the same before the search warrant was issued. Although we do not think that the search warrant or its affidavit were defective, such a proceeding before an independent magistrate is a vital safeguard and factor in reviewing the validity of the affidavit for the search warrant and the search warrant itself. The independent magistrate found that probable cause existed.

Later in the first suppression proceeding the Appellant announced that he had no objection to State's Exhibit No. 4 which was the return and the inventory on the

warrant. The objection of Appellant at the first motion to suppress hearing was reduced to the affidavit alone. Appellant had previously objected that the search warrant, the return, and the supporting affidavit had never been filed as a public record. But we note that these instruments were filed July 3, 1986, by Peggy Stevens, District Clerk of Montgomery County. The motion to suppress was heard on August 19, 1986, and the questioned documents had been on file in the public records for over a month. We think the file marks overrule this contention.

Objection was made at the first motion to suppress hearing that the affidavit did not comply with *TEX. CODE CRIM. PROC. ANN.* art. 18.01 (Vernon Supp.1989) because it had not been public information as required by Article 18.01; therefore, the warrant, itself, was facially invalid. We perceive Article 18.01(b), reading in relevant part: "[t]he affidavit is public information if executed" was followed. From the file marks on the instruments, themselves, we decide that Article 18.01(b) was complied with.

We think that because Bunky Henry actually received some pornographic material from his son, Brad Henry, that our decision is in conformity with *Hennessy v. State*, 660 S.W.2d 87 (Tex.Crim.App.1983). *Hennessy, supra*, dealt with the hearsay rule, substantially holding that hearsay upon hearsay may be utilized to show probable cause as long as the underlying circumstances indicate that there is a substantial basis for crediting the evidence at each level. Our record definitely meets this test and it is much stronger for the State than *Hennessy, supra*. We determine that Article 18.01, secs. (a) and (b) were complied with. Probable cause existed; the issuing magistrate so found and acted properly in issuing the search warrant. Under the totality of circumstances test, the affidavit and search warrant were valid. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, *rehearing den'd*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983).

### The Appellant's Second Motion to Suppress

■ At the hearing on the Second Motion to Suppress urged by Savery, George W. Henry, the same person as "Bunky" Henry, testified. Bunky knew and had known Savery for some time and identified Savery in the courtroom. Bunky had actually worked for Mr. Savery for a number of years in a venture capital company involved in the development of enhanced oil recovery technologies.

Bunky testified that he contacted the Montgomery County Sheriff's Department about Mr. Savery in regards to pornographic material. Bunky's son had brought the pornographic material home and had shown it to Bunky and the wife of Bunky. The next day the sheriff's department was notified by Bunky.

Bunky further testified about a grey Audi automobile. The car had been bought for Mr. Savery. The legal title to the car, however, was in Bunky's name because of financing problems. Later, the liability insurance was cancelled. Bunky was not in possession of the car because Savery used it. Bunky was afraid of personal liability when Mr. Savery was driving the car or permitted other people to drive it. Bunky located the Audi at the airport. The car had been in the use and possession of Savery at that time. Finally the car was delivered back to the finance company sometime in 1986. The car was driven from the airport to the home of Bunky. Bunky was cleaning the car out. He opened the trunk and found a steamer trunk and a suitcase full of various kinds of materials and pictures.

Bunky went to Savery's house and approached Terry Robertson and advised Terry what had been found in the trunk of the Audi. The trunk was not latched. Bunky stated that Terry was going to obtain and run a search warrant on the house. The trunk of the automobile was mentioned at the time that Terry was going to approach a judge to obtain a search warrant. The record on this motion to suppress and the record on the case on the merits, we think,

establishes a second, necessary affirmative link to the Appellant.

Furthermore, on the second motion, the witness—or "affiant"—was Bunky, who definitely identified his son, Brad. Thus, at the second motion, Brad was not a sub-informant and Brad's identity was known.

Bunky Henry stated that he knew and immediately recognized child pornography in the steamer trunk which was inside the trunk of the Audi. He described this child pornography as cartoons, drawings and photographs. In the steamer trunk, Bunky recognized writing and other materials that he definitely recognized as the handwriting of Savery.

Terry Robertson was a witness on the second motion to suppress. Robertson testified that there was a brown metal foot locker trunk and also a grey suitcase inside the trunk of the Audi. He testified that the trunk of the Audi was opened by a key and the lock on the foot locker trunk had been smashed and the suitcase did not have to be broken into. Robertson examined the contents of the foot locker trunk and the suitcase and these contents were the same kind of materials that were found in the house of Savery.

We cannot agree with point of error number three which advanced the contention that there was no evidence, or in the alternative, insufficient evidence to show that the Appellant intentionally and knowingly possessed child pornography. The record reflects that these materials conceded to be child pornography were discovered in the home of the defendant and some in his personal, private bedroom which at times was locked. We concluded there is a definite affirmative link between the pornographic material and Appellant.

### The Informant Issues

■ Furthermore, where the named informant in the affidavit is a private citizen, especially of the same county, whose contact with the police is as a result of having witnessed a criminal offense committed by another or who (as here) is in possession of important indicia and materials such as child pornography, then the credibility and reliability of that named citizen informant is inherent. Bunky was not an ordinary informant. See Esco v. State, 668 S.W.2d 358, 361 (Tex.Crim.App.1982); Wood v. State, 573 S.W.2d 207 (Tex.Crim.App.1978). As to the sub-informant Brad Henry, his information was based on the fact that he actually lived in the Appellant's home for a time and that he actually found some of the materials made the basis of the search warrant. Some of these materials were in a trunk in the Appellant's personal bedroom. Other similar materials were sought to be recovered by means of the search warrant. Hence, a common sense, realistic interpretation of the affidavit is justified. See Doescher v. State, 578 S.W.2d 385 (Tex.Crim.App.1987). Neither Bunky nor Brad worked for law enforcement.

Brad Henry, of course, had Appellant's consent to be in the Appellant's home since he had lived there for some period of time. When he saw the pornographic material involving children in the Appellant's personal bedroom, he became a credible, named sub-informant who was qualified to supply information at his level to show probable cause.

### The Affirmative Link

■ Under this record we conclude at the trial on the merits sufficient evidence existed to show an affirmative link between the pornographic material and the Appellant and we find that there is sufficient evidence to show that the Appellant exercised care, control, custody and management over the "contraband". Houston v. State, 663 S.W.2d 455 (Tex. Crim.App.1984); Naquin v. State, 607 S.W.2d 583 (Tex.Crim.App.1980); Dubry v. State, 582 S.W.2d 841 (Tex.Crim.App.1979). The record reflects that in the house in question there was a master bedroom in which the Appellant slept. Savery made a number of business trips. Sometimes these trips lasted about a week. Brad testified that the Appellant slept in the master bedroom regularly when he was in his residence. The master bedroom was usually locked unless the maid was there to clean.

The lock in the door to the master bedroom was described as a deadbolt.

On June 18, 1986, there was a break-in in the house of the Appellant. The Appellant was not in the residence at the time. As a result of the breaking and entering a VCR was taken. Also, Mr. Savery's bedroom had been broken into. The door to the bedroom was broken. There was a silver footlocker that had been broken open in the master bedroom. The silver footlocker was also described as a silver chest in the record and the materials inside the silver chest and immediately around the silver chest were all very similar.

### The "Intentionally and Knowingly" Possession Issue

Brad also testified that after the burglary he saw a lot of papers with the Appellant's own handwriting on them along side of the pornographic materials. He stated he was familiar with the Appellant's handwriting and actually had seen the Appellant sign his name and handwrite other matters. In a later telephone conversation between Brad and the Appellant (when Brad indicated to the Appellant that he had materials depicting child pornography) Brad testified Mr. Savery laughed. Later in the conversation in reference to certain materials that Brad had discovered in the master bedroom, Savery said that he was using that material for his "book". The house and bedroom involved belonged to the Appellant, utilities at that address were listed in his name, and a vehicle registered to him was seen parked at the house. We think that under the cases *Houston v. State*, supra; *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983) (Opinion on Rehearing); *Denby v. State*, 654 S.W.2d 457 (Tex. Crim.App.1983) (Opinion on Rehearing), that the evidence is sufficient and more than sufficient to show that the Appellant intentionally and knowingly possessed the child pornography found in his bedroom. The nature and details of the actions depicted and portrayed by "Bob and Dave's Love Story", we conclude, possess strong probative evidence on the issue of intentionally and knowingly possessing child pornography. A medical expert, Dr. Sid-

ney Garrett, testified that a number of the State's proffered exhibits definitely depicted young males under the age of 17 years. Dr. Garrett possessed expertise and experience in pediatrics. He had studied the development of the human anatomy. He testified concerning pre-pubertal and post-pubertal developments. The doctor carefully distinguished those proffered State's exhibits that depicted young males under the age of 17 years. The third point of error is overruled.

### The Film Images Question

Point of error four avers that the evidence is insufficient to show the Appellant knew the nature of the film images on the photographs involved. The record contains a photograph that depicts the paddling of children's nude buttocks. The record reflects that the Appellant himself engaged in this type of conduct with Brad. Brad testified that he had been given credit cards, namely, VISA and Master Cards and that there was apparently no monetary limit on the same. Brad testified that the first month that he lived in Savery's house, he charged over $2,000 on one credit card. Later a trip to Bermuda was charged. But Brad said he had to work for these trips and large sums of monies. In the record we find:

"Q All right. Did any of this money or any of these things come at a time—at any particular time or occasion, I mean. Did you ever get more money or more trips after anything was done, after any specific acts?

"A Yes.

"Q Which acts were they?

"A After I was spanked, he would. I would always ask for money after that."

We overrule point of error number four.

### The Issue of Extraneous Matters

■ Introduced extraneous matters were certainly relevant to material issues in this case as shown by the accusatory pleading and the position taken by the accused at trial and reasserted in the accused's brief on appeal. *See Clark v.*

*State,* 726 S.W.2d 120 (Tex.Crim.App.1986); *Albrecht v. State,* 486 S.W.2d 97 (Tex.Crim. App.1972). A typical example of the extraneous acts or offenses were the spankings administered by the Appellant to Brad on Brad's naked buttocks. We decide that the evidence in the record of extraneous acts and offenses does possess probative value relevant to elements of the offense charged and that the probative value is not outweighed by prejudicial effect. Especially in cases where the intent, scienter or guilty knowledge is an essential element of the offense, the rule is established that the prosecution must prove this element beyond a reasonable doubt to obtain a conviction. Thus, the materiality and admissibility of this type of extrinsic offenses are established without real dispute. *See Morgan v. State,* 692 S.W.2d 877 (Tex.Crim. App.1985). Moreover, some of the challenged extraneous materials were admissible as child pornography. Several of the State's exhibits depicted young boys totally naked bound to chairs. One exhibit showed a young boy screaming and crying out. Another showed stripe marks on his upper thighs and buttocks and lower back. These photographs, we decide, had strong probative value of the elements of knowingly and intentionally possessing material containing a film image depicting a child younger than 17 years, said child being engaged in sexual conduct and that the Appellant knew that the said material depicted such conduct. It must be borne in mind that the defense contended that the numerous spankings on bare buttocks were only reasonable discipline because of low grades and disobedience.

A phase of the State's evidence was that the Appellant had child pornography secreted and locked in a silver trunk or silver chest in the Appellant's personal bedroom which at certain times was kept locked—at other times not. Further it was shown that two other people lived in the house. Also, Appellant usually was in the bedroom whenever any other person entered that special room. There were papers in the Appellant's own handwriting that were among certain pornography that was discovered by Brad after the burglary. Child pornography was also secreted in file cabinets in the living area in the Appellant's homeplace near his bedroom door. These cabinets were kept locked. The persons that lived in the Appellant's house did not have keys to the filing cabinets. However, a breaking and entering occurred with serious vandalism and much scattering about of Savery's papers, magazines and other materials. The child pornography was discovered after the burglary took place because, among other things, the silver chest or silver footlocker was broken open and the pornographic material was scattered about near the chest and disheveled and messed up in the silver chest. Appellant was called back to his home. He made diligent efforts to clean up his room prior to the time of the arrival of the officer who investigated the burglary.

Through vigorous and searching cross-examination the Appellant attacked the State's case on intent, guilty knowledge, and affirmative link of the pornography material to Appellant.

The Appellant meant to leave the impression in the record that the boys living in the house allowed a third person to break and enter the home and to take certain valuable documents owned by the Appellant and to continue to possess the documents in return for the payment of money. The trend of the evidence was to the effect that perhaps the boys, as a pretext, staged the burglary. There is also at least an intendment from the cross-examination that one of the Henry boys might have stolen some of Mr. Savery's possessions out of his house or some silverware out of a condo previously possessed by Appellant. There was also a contention that a third person had stolen a very valuable Elizabethan document from Mr. Savery's home. The document was described as a large one. However, it was recovered by Mr. Savery. The Henry boys denied that any third person known to them had committed the breaking and entering. However, a friend of the boys took possession openly of the Elizabethan document after the burglary, voluntarily returning it later. There was certainly other circumstantial evidence that

had a tendency to undermine the State's proof on the issue of whether Savery intentionally or knowingly possessed child pornography.

We determine *TEX.R.CRIM.EVID.* 404(b) came into play. Hence, the spanking of the Henry boys on their unclothed buttocks with a wooden paddle became relevant on the issue of intent and guilty knowledge of kiddie porn by Appellant because the child pornography photographs themselves depict the same sort of conduct that the Appellant engaged in, during the spanking episodes, testified to at length by Brad. Thus, this extraneous spanking was admissible.

But another facet of this strain of evidence is that the same was relevant and material as to whether the boys understood the spanking as a result of need for reasonable disciplinary action—Appellant's contention—as opposed to receiving money to allow the Appellant to act out his own tendencies or proclivities, which were relevant to intent and scienter. We conclude that the trial judge properly admitted these matters. A number of the State's exhibits did tend to prove the State's theories about tendencies and proclivities. These same exhibits unquestionably depicted child pornography. There was no abuse of discretion. *See Templin v. State,* 711 S.W.2d 30 (Tex.Crim.App.1986). The extraneous acts and offenses were placed into evidence on a limited, restricted basis and for a narrow purpose. In the charge of the court the jury was so instructed that these acts could only be considered on the issue of intent to possess and for no other purpose. No error is shown.

The trial court determined that there was a rational, logical relationship between the spanking on the naked buttocks and the money, which relationship was probative of guilty knowledge when the photographs themselves are examined by the jury. Because of the details of the spankings, the State contended vigorously that this evidence showed sadomasochistic tendencies on the part of Appellant. The State strongly contending that the use of the whips and paddles in the manner employed

by Appellant was sadomasochistic and was not for the purpose of discipline, but, rather for the purpose of the pleasure and gratification of the one doing the paddling and that the testimony tended to show that the state of mind of Appellant was a culpable one in relationship to the knowing possession of the child pornographic pictures; knowing, as well, the images of the films and photographs.

The trial court ruled that the fact that the one beaten and whipped had to pull his pants down and be beaten several times was relevant evidence to an element of the offense and supported the admissibility of the photographs to show Appellant knew of the images depicted thereon. The spanking episodes and the evidence thereof is relevant to certain material issues of intent and it is certainly relevant also to demonstrate that the Appellant was giving the Henry boys money and providing a shelter for them in return for permitting him—at least some of the evidence tended to show this—permitting and allowing the Appellant to act out the conduct that was portrayed in the child pornographic photographs and materials. We do not agree with Appellant.

### The Extraneous Offenses Issue

▇ Noteworthy to this contention is the posture and defenses of the accused. Crucial here is a careful analysis of the record in this case. Each case should be reviewed on its own facts. The prosecution had a need to prove the requisite intent, scienter, guilty knowledge, knowledge of the images on the film to meet the accused's contention that he was writing a book and allegedly following certain biblical teachings. Thus, the extraneous acts and offenses, such as the whippings and the beatings showing stripes, were needed to counter the accused's contention that the administering of such corporal punishment was allegedly based in the Bible. Also, these extraneous acts and offenses were necessarily more probative in character than prejudicial. *See Boutwell v. State,* 719 S.W.2d 164 (Tex.Crim.App.1985) (Opinion on State's Motion for Rehearing).

The State's exhibits, being photographs, depicting young boys tied down or trussed to furniture or other objects, were admissible and probative. Some of these exhibits show these young boys screaming. Their anuses and rectal areas were exhibited. The stripes on one exhibit were numerous and extended to the lower back area of the recipient. These photographs were properly admissible and of probative value to disprove the accused's contentions of justification, biblical or otherwise.

Furthermore, these extraneous acts and the State's exhibits made the Henry boy's testimony and accusations more plausible. Some of the State's exhibits were, of course, admissible in order for the prosecution to carry its burden on a contested issue such as intent, motive, guilty knowledge and to rebut a defensive theory or contention. *Id.* We find the admission of these exhibits to be necessary and important to rebut the Appellant's defensive theory or contention. We hold that the probative value of this evidence definitely outweighed any prejudicial effect. Therefore, we overrule point of error number five.

### The Venue Issue

We do not find merit in the Appellant's point of error number six wherein he challenges the action on the venue motion. Appellant states that the venue motion should have been granted as a matter of law. We simply disagree. We have passed on this question previously. *See Savery, supra.* Because of the aforementioned statement we overrule point of error number six.

Point of error number seven is really a rephrasing of point of error number one. The Appellant dogmatically states that the Texas Child Pornography statute, *TEX.PENAL CODE ANN.* sec. 43.26 (Vernon 1974), is unconstitutional insofar as the privileged possession of obscene child pornography in the home of a possessor is concerned. But the Appellant is not accurate in asserting that the totality of the kiddie porn was in Savery's residence. Some of it was in a trunk placed within the automobile trunk of a car parked at the airport. Thus, the said statute is in direct violation of *Stanley v. Georgia, supra.* We have previously decided this question adversely to the Appellant. We overrule this point.

We have considered all the Appellant's points of error on appeal. We overrule each and every one. The judgment and sentence of $2,000.00 fine and 90 days in the county jail plus court costs are affirmed.

AFFIRMED.

BURGESS, Justice, dissenting.

I respectfully dissent. I must note, at the onset, the unusual posture of this case. While the majority states that this court previously denied a writ of habeas corpus, *Savery v. State*, 767 S.W.2d 242 (Tex.App.—Beaumont 1989, no pet.), what was actually before this court was an appeal from the denial of a writ of habeas corpus filed in a lower court. In fact, the opinion so stated at 247: "We have viewed this proceeding, as we now should, as an appeal from a denial of an application for habeas corpus.... We stress, as stated above, that this proceeding is an appeal concerning the denial of habeas corpus." As noted in this writer's concurring opinion, the previous majority, while noting "WRIT OF HABEAS CORPUS DENIED", actually affirmed the lower court's denial of the writ of habeas corpus then went on to allow an ordinary appeal. I continue to assert that *TEX.R.APP.P. 44* does not allow this court to affirm the denial of a writ of habeas corpus and simultaneously allow an appeal. Therefore, this court, in my opinion, is without jurisdiction to consider this appeal.

Having done so, I dissent to the majority's disposition of the search warrant issue. Specifically, I dissent to the majority's holding that the probable cause affidavit meets the totality of circumstances test under *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) or the requirements of *Hennessy v. State*, 660 S.W.2d 87 (Tex.Crim.App.1983). The defect in the affidavit is that it contains nothing to allow the magistrate to judge the credibility of the sub-informant. I felt the exact issue was properly presented to our

**332**

Court of Criminal Appeals in *Roldan v. State*, 698 S.W.2d 741 (Tex.App.—Beaumont 1985) when the court granted appellant's petition for discretionary review. However, the court viewed this statement: "I would hold that the facts in this case do not meet the requirements of *Gates, supra,* and *Hennessy, supra.*", as a factual disagreement among the justices and consequently dismissed the review as improvidently granted. *Roldan v. State*, 739 S.W.2d 868 (Tex.Crim.App.1987). They were *wrong;* there was no factual disagreement, only an inarticulate statement which meant to state that the majority had misapplied the law to the facts.

Let there be no doubt in this case. There is *NO* factual disagreement. The affiant swore that he received information from Bunky Henry while giving sufficient information to establish the credibility of Bunky. The affiant further swore that Bunky had received materials from his son Brad who had told Bunky the materials had come from the home of appellant. There is absolutely nothing in the affidavit from which the magistrate could determine the credibility of Brad except that Brad was Bunky's son. Unlike the majority, I do not believe that *Gates* and *Hennessy* have completely abandoned the requirement that an affiant receive information from a reliable, credible person and that there be some information in the affidavit to establish the credibility of each informant and sub-informant. The majority misinterprets the law in that regard.

The trial court erred in overruling the motion to suppress and admitting the items found as a result of the search. Therefore, the case should be reversed and remanded for a new trial. Because the majority affirms, I respectfully dissent.